DENNIS E. NEUMANN v. ZONING BOARD OF APPEALS OF THE BOROUGH OF STONINGTON
(5108)

DUPONT, C. J., BORDEN and O'CONNELL, Js.

Argued December 1, 1987—decision released April 5, 1988

*Eugene C. Cushman,* for the appellant (plaintiff).

*Timothy D. Bates,* for the appellee (defendant).

BORDEN, J. The plaintiff appeals from the judgment of the trial court dismissing his appeal from a decision of the defendant, the zoning board of appeals of the borough of Stonington. That decision reversed a decision of the Stonington planning and zoning commission (commission) granting the plaintiff's application for a zoning permit to construct a single family dwelling on a substandard lot owned by the plaintiff.[1] The plaintiff claims that the trial court erred by conclud-

---

[1] The applicant for the permit before the commission and the defendant board was Christopher H. McLaughlin, who then owned the property in question. After certification for appeal was granted by this court and the appeal was filed, McLaughlin transferred the property and his claim in connection therewith to the named plaintiff herein, Dennis E. Neumann, and we granted Neumann's motion to be substituted as the plaintiff. We therefore refer to Neumann as the plaintiff. Under these circumstances, the plaintiff has sustained his interest in the property throughout the course of the appeal, and is aggrieved. Compare *Goldfeld* v. *Planning & Zoning Commission,* 3 Conn. App. 172, 177, 486 A.2d 646 (1985) (where plaintiff's interest in property terminated before judgment rendered by trial court, and no successor in interest substituted therefor, plaintiff not aggrieved).

ing that his property is not a "lot" within the meaning of the applicable zoning regulations of the borough, and thus was not entitled to a permit for construction of a residence on a substandard lot pursuant to those regulations.[2] We find no error.

The plaintiff's property in question, known as the "wharf property," and also known as No. 96½ Water Street, fronts on Water Street. It stretches westerly down to the waterfront and continues as a wharf out into the Stonington harbor. At the westerly end of the property is a structure, identified on the plaintiff's map as a one-story house, which the plaintiff proposes to replace with a larger, single family house. The property does not conform to the borough's zoning regulations due to inadequate frontage on Water Street.

The plaintiff acquired the property in 1984 from Muriel Bartram, who had acquired it in 1964. As of December 14, 1981, the effective date of the borough's zoning regulations, Bartram owned both the wharf property and the parcel adjacent to it to the south, known as No. 96 Water Street and also known as the "homestead property," which she had acquired in 1953. There is a single family house situated on the homestead property. Both the wharf property and the homestead property have always been described separately in deeds, and have been taxed separately. There was evidence before the commission and the board, however, that as of December 14, 1981, and throughout her common ownership of the two parcels, Bartram

---

[2] The plaintiff also claimed, in two assignments of error, that the trial court applied an improper scope of review to the defendant's decision by deferring to the defendant's interpretation of the regulations rather than interpreting the regulations itself. Subsequent to its initial memorandum of decision, however, the court further articulated its decision and made sufficiently clear that it agreed with the defendant's interpretation of the regulations, and that it was not simply deferring to that interpretation. Thus, these two claims are without merit.

used the two parcels in fact as one unit, the structure located on the wharf property being treated as an accessory structure to the house located on the homestead property.

The issues on this appeal revolve around two sections of the borough's zoning regulations. Section 3.8, entitled "Substandard Lots," provides in pertinent part: "Any lot which was separately described in the latest deed of record immediately prior to the effective date of these Regulations, . . . which does not meet the requirements of these Regulations as to lot area and/or frontage, may be utilized for any use permitted in the zone in which such lot is located . . . ." Section 2.58 defines a "lot" as "[o]ne or more adjacent parcels of land under single ownership to be used, developed, or built upon as a unit."

The plaintiff claimed to the defendant and to the trial court that he was entitled to a permit for the wharf property because it was a "lot which was separately described in the latest deed of record immediately prior to the effective date of" the regulations, and that it thus came within the provisions of § 3.8. The defendant concluded, however, and the trial court agreed, that the wharf property and the homestead property merged by reason of their use as a unit as of the effective date of the regulations, and that, therefore, the wharf property alone was not a *"lot* which was separately described" within the meaning of § 3.8. (Emphasis added.)

The plaintiff first claims that the court erred because the regulations do not incorporate the doctrine of merger. He argues that the defendant's position deprives him of his vested right in a nonconforming use. He also argues that because zoning regulations, being in derogation of the common law, must be strictly construed, any merger doctrine must be clearly stated

in the regulations, and that, therefore, the merger doctrine is inapplicable in this case because the regulations do not clearly incorporate it. We disagree.

The plaintiff's reliance on a claim of deprivation of a vested right in a nonconforming use; see, e.g., *Petruzzi* v. *Zoning Board of Appeals,* 176 Conn. 479, 408 A.2d 243 (1979); simply misses the mark. The plaintiff did not present this case to the defendant on a claim of nonconforming use. His claim was that his application fell within the meaning of § 3.8 regarding substandard lots. Viewed solely as a separate lot prior to the adoption of the zoning regulations, the wharf property did not thereby attain nonconforming use status at the adoption of those regulations. See *Sherman-Colonial Realty Corporation* v. *Goldsmith,* 155 Conn. 175, 183–84, 230 A.2d 568 (1967). Furthermore, § 8 of the regulations covers nonconforming uses, and it is clear from § 8.2 that a nonconforming use cannot be extended, enlarged or moved to a part of a parcel where the use did not previously exist. The plaintiff's proposed, larger house would clearly fail to meet those restrictions. The plaintiff has not presented us with any authority, nor are we aware of any, that gives him a vested right to use a nonconforming lot by enlarging a building thereon without regard to restrictions placed on such use by applicable zoning regulations.

We also reject the plaintiff's argument that § 2.58 of the regulations does not apply to his property because that section does not specifically state that under its provisions a "merger" of the two parcels takes place. It is true that some zoning regulations which deal with the question of the permitted use of nonconforming lots refer specifically to the merger doctrine. See, e.g., *Torsiello* v. *Zoning Board of Appeals,* 3 Conn. App. 47, 48–49 n.2, 484 A.2d 483 (1984). ("Since the time the lot was caused to be non-conforming by virtue of a revised zoning regulation, the lot has never been uti-

lized in conjunction with adjacent property so that the identity of the lot in question has not merged with adjacent property." Milford Zoning Regulations § 6.4.2.[3].) This does not mean, however, that such a regulation must, in talismanic fashion, use the word "merger."

Zoning laws generally have dealt with the issue presented by this case in a manner consistent with the defendant's position. Under many zoning ordinances, where a lot became substandard by virtue of the passage of more restrictive zoning regulations, and where that lot was at the time of the passage of that legislation under common ownership with that of an adjacent lot, such zoning regulations have refused to continue to recognize the separate validity of that lot. "The common exception of lots which were recorded prior to the effective date of a restrictive ordinance is limited to lots which were in single and separate ownership on that date. Under such a provision, an owner is entitled to an exception only if his lot is isolated. If the owner of such a lot owns another lot adjacent to it, he is not entitled to an exception. Rather, he must combine the two lots to form one which will meet, or more closely approximate, the frontage and area requirements of the ordinance." (Footnote omitted.) 2 Anderson, American Law of Zoning (3d Ed.) § 9.67. It is true that "contiguous land all owned by the same proprietor does not necessarily constitute a single lot." *Bankers Trust Co.* v. *Zoning Board of Appeals,* 165 Conn. 624, 632, 345 A.2d 544 (1974). Whether a zoning ordinance requires that two commonly owned and adjacent lots be merged in this fashion does not, however, depend "on the mere absence of a merger clause. That intent can best be ascertained from an examination of the entire ordinance." *Hill* v. *City of Manhattan Beach,* 6 Cal. 3d 279, 284, 98 Cal. Reptr. 785, 491 P.2d 369 (1971).

Although the borough zoning regulations may well have more clearly delineated the relationship between

§§ 2.58 and 3.8 under the circumstances present here, an examination of the entire ordinance leads us to conclude that the word "lot" as used in § 3.8 must be read to refer to the general definition of "lot" in § 2.58, and that definition incorporates the doctrine of merger. Section 2.58 defines "lot" as *"[o]ne or more adjacent parcels of land under single ownership to be used, enlarged, or built upon as a unit."* (Emphasis added.) The regulations also define a "Lot of Record" as "a lot for which a deed has been recorded"; § 2.66; and they also specifically define the related terms, "Lot Area"; § 2.59; "Lot Building"; § 2.60; "Lot Coverage"; § 2.61; "Lot Lines"; § 2.62; "Lot Line, Front"; § 2.63; "Lot Line, Rear"; § 2.64; and "Lot Line, Side." § 2.65. "Under the definitions given in the ordinance, 'lot' is the general term"; *Corden* v. *Zoning Board of Appeals,* 131 Conn. 654, 661, 41 A.2d 912 (1945); the definition of which must be read into the use of the term in the rest of the regulations. Otherwise, it would be difficult to perceive a reason for including in the regulations a specific definition of "lot" and then using that defined term throughout the regulations. The plaintiff's position would require us to ignore the definition of "lot" in § 2.58 when reading the term "lot" in § 3.8. This we cannot do.

That definition, applied to the facts of this case, leads to the conclusion that Bartram's use of the wharf property in connection with the homestead property merged the two parcels. On the effective date of the zoning regulations, Bartram owned both parcels, and her use of them at that time demonstrated that they were then and were in the future "to be used . . . as a unit." § 2.58. Thus, at that time the "two adjacent parcels of land under single ownership" constituted a single "lot." § 2.58. They could not thereafter be redivided into two lots.

This conclusion is consistent with the general goal of zoning law " 'to reduce nonconforming to conforming uses with all the speed justice will tolerate.' " *Helbig* v. *Zoning Commission,* 185 Conn. 294, 306, 440 A.2d 940 (1981), quoting *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 181, 377 A.2d 280 (1977). By requiring on the effective date of the zoning regulations a focus on the actual use of the two parcels, in order to determine whether the substandard wharf property was in fact then being used as a part of the homestead property, the regulations operated to reduce a nonconforming lot to a conforming lot. This conclusion is also consistent with the approach of our Supreme Court in determining, in other but similar contexts, whether a particular parcel is a "lot" within the meaning of municipal zoning regulations. That approach has been to focus on the actual use of the parcel on the effective date of the zoning regulations. See, e.g., *Schultz* v. *Zoning Board of Appeals,* 144 Conn. 332, 130 A.2d 789 (1957); *Corden* v. *Zoning Board of Appeals,* supra, 658–64.

The plaintiff also argues, relying on *Bankers Trust Co.* v. *Zoning Board of Appeals,* supra, 634, that the existence of a right-of-way separating the two parcels precluded their merger into one lot. We decline to review this claim.

First, as the defendant rightly points out, the plaintiff did not make this claim before the commission, the defendant board, or the trial court. We ordinarily review an appeal on the theory on which it was tried in the trial court. *Travelers Ins. Co.* v. *Hendrickson,* 1 Conn. App. 409, 411 n.3, 472 A.2d 356 (1984).

Second, unlike *Bankers Trust Co.* v. *Zoning Board of Appeals,* supra, 633, where there was an undisputed right-of-way in favor of the land in question and other parcels, in this case the parties are in dispute regard-

ing the location and use of the right-of-way. The plaintiff claims that there is a right-of-way dividing the two properties for the benefit of the homestead property, the wharf property and "the lot to the north as well as for the rear portion of lot 96½." The defendant, however, claims that the right-of-way "runs along the northerly border of [the homestead property] to and occupying all of that portion of [the wharf property] which leads to the street," and "serves the necessary function of a driveway for the main house" on the homestead property. Thus, the defendant claims, the right-of-way "joined the two parcels rather than splitting them up." We cannot determine from this record where the right-of-way is located or what its function is. With respect to this claim, therefore, the defendant has not met his appellate obligation of supplying an adequate record on which to consider his claim; *Carpenter* v. *Carpenter,* 188 Conn. 736, 739 n.2, 453 A.2d 1151 (1982); and this would be a particularly inappropriate case to remand for further articulation since the plaintiff did not develop these facts before the zoning authorities.

There is no error.

In this opinion the other judges concurred.