[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED APRIL 11, 1996
STATEMENT OF APPEAL[1]
On December 11, 1993, the Giants Neck Beach Association[2]
Zoning Commission (Zoning Commission) denied the plaintiff's application to construct a house on lot 276 located on Giants Neck Road, East Lyme, Connecticut. (Return of Record [ROR], Exhibit 2: Meeting of Giants Neck Beach Association, December 11, 1993.) On January 5, 1994, the plaintiff appealed the Zoning Commission's decision to the defendant, Giants Neck Beach Association Zoning Board of Appeals (ZBA). (ROR, Exhibit 1: Application of Richard Ranelli, January 5, 1994.) On May 28, 1994, the ZBA dismissed the plaintiffs appeal and upheld the Zoning Commission's decision. (ROR, Exhibit E: Letter to David M. Royston, June 4, 1994.) The plaintiff, Richard J. Ranelli, now appeals from the ZBA's decision denying him permission to build a house on lot 276. CT Page 2851-KKK
BACKGROUND
On August 30, 1961, Ludwig Coiro and Julie Coiro purchased lot 277 on Giants Neck Road in East Lyme, Connecticut. (ROR, Exhibit 5: Deed from Frank and Ethel Schirmer to Ludwig and Julie Coiro, Lot 277, August 30, 1961.) The Coiros built a house on lot 277 in 1962. (ROR, Exhibit 7: Affidavit of Ludwig Coiro, May 4, 1994, para. 3.) On September 24, 1968, the Coiro's purchased the adjacent lot, numbered 276 on Giants Neck Road, from Avy Smith. (ROR, Exhibit 6: Deed from Avy Smith to Ludwig and Julie Coiro, Lot 276. September 24, 1968.) Lot 276 was and still is vacant. (ROR, Exhibit 4: Memorandum in Support of the Appeal of Richard Ranelli.) The Coiros filed both deeds separately and the deeds to the lots remain separate to this date. (ROR, Exhibit H: Transcript of May 7, 1994 Public Hearing, p. 13.)
On May 30, 1987, the Board of Governors of the Giants Neck Beach Association approved the zoning regulations that apply to this appeal. (ROR, Exhibit I: Bylaws, Ordinances and Zoning Regulations Adopted May 30, 1987.) At the time of such approval, the Coiros owned lots 277 and 276. (ROR, Exhibit 4.) Section 3001 of Chapter III of the zoning regulations, which is entitled Lot and Building Regulations, states "[n]o building shall hereafter be erected or altered to exceed the height, or to occupy a greater percentage of lot area, or to have narrower or smaller front yards, rear yards, side yards, or courts than is required by Section 3004 of these regulations." (ROR, Exhibit I.) Section 3004 of Chapter III of the zoning regulations provides that the minimum lot area is 8,000 square feet. (ROR, Exhibit I.) Section 4003 of Chapter IV of the zoning regulations, which is entitled Nonconforming Uses of Land and Buildings and Structures, states, however, "[n]othing in the Giants Neck Beach Association Zoning Regulations shall prevent the construction of a single permitted building or a single permitted use of a single lot under separate ownership which prior to the adoption of these Regulations or any additions or changes, and continuously thereafter was established as a separate lot under separate ownership by deed or approved subdivision plan recorded in the land records of the Town of East Lyme. A lot so existing in separate ownership or a group of adjacent lots so existing under the same ownership of record may be subdivided so as to contain not more than three lots, each of not less in area and width than 80 percent of the area and width herein prescribed." (ROR, Exhibit I.) Lot 276 has an area of approximately 6,900 square feet and 50 feet of frontage, and, CT Page 2851-LLL therefore, is a nonconforming lot under the 1987 zoning regulations. (ROR, Exhibit H, page 7.)
John Ranelli purchased lot 277 from the Coiros on November 5, 1987. (ROR, Exhibit 13: Deed from Ludwig and Julie Coiro to John Ranelli, Lot 277, November 5, 1987.) On November 5, 1987, the plaintiff purchased lot 276 from the Coiros. (ROR, Exhibit 15: Deed from Ludwig and Julie Coiro to Richard Ranelli, Lot 276, November 5, 1987.) The plaintiff then applied to the Zoning Commission for a building permit in order to construct a house on lot 276. (ROR, Exhibit 2.) The Zoning Commission denied the plaintiffs application because lot 276 did not satisfy the minimum lot area requirement. (ROR, Exhibit 2.) Ranelli appealed the Zoning Commission's decision to the ZBA. (ROR, Exhibit 1.)
On May 7, 1994, the ZBA held a hearing regarding the plaintiff's appeal. (ROR, Exhibit H.) The ZBA denied the appeal and upheld the Zoning Commission's decision on May 28, 1994. (ROR, Exhibit F: Notice of Decision Filed in Office of Town Clerk, June 4, 1994.) The ZBA did not specifically state its reasons for denying the appeal, however, the individual reasons of each member are included in the ZBA's findings and conclusions.[3] (ROR, Exhibit G: Findings and Conclusions of the ZBA, June 4, 1994, page 16.)
The ZBA published its decision on June 9, 1994. (ROR, Exhibit D: Notice of Decision and Publication in The Day.) On June 17, 1994, the plaintiff commenced this appeal. On July 7, 1994, the plaintiff filed its appeal in the Superior Court. On November 21, 1994, the ZBA filed its answer.
JURISDICTION
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board of appeals to the Superior Court. To take advantage of a statutory right of appeal, parties must comply strictly with the statutory provisions that create such a right. Simkco v. Zoning Board of Appeals, 206 Conn. 374, 377,538 A.2d 202 (1988). The statutory provisions are mandatory and jurisdictional in nature, and failure to comply will result in dismissal of an appeal. Id.
Aggrievement
An aggrieved person constitutes a "person aggrieved by a CT Page 2851-MMM decision of a board . . ." General Statutes § 8-8(a)(1). Aggrievement is a jurisdictional matter and it is a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303, 307, 592 A.2d 953 (1991). Aggrievement implicates the plaintiff's standing to appeal and, therefore, represents the first issue the court must address.McNally v. Zoning Commission, 225 Conn. 1, 5-6, 621 A.2d 279
(1993). The issue of aggrievement is a question of fact. Id. Unless the plaintiff alleges and proves aggrievement, his or her appeal must be dismissed. DiBonaventura v. Zoning Board ofAppeals, 24 Conn. App. 369, 373, 588 A.2d 244 (1991). An owner of the subject property is aggrieved and entitled to bring an appeal. Winchester Woods Associates v. Planning ZoningCommission, supra, 219 Conn. 308.
The plaintiff in this appeal is Richard Ranelli, the owner of the land at issue. (ROR, Exhibit 15.) According to the plaintiff's appeal, the Giants Neck Beach Association Zoning Commission denied the plaintiff's "application for a building permit to construct a house at 227 Giants Neck Road . . ." (Plaintiff's Appeal, June 16, 1994, para. 3.) The plaintiff further alleges that he appealed the Zoning Commission's decision to the ZBA and on May 28, 1994 the ZBA "voted to deny the application." (Plaintiff's Appeal, June 16, 1994, para. 5.) Furthermore, the plaintiff alleges that he "is aggrieved by the decision of the Defendant Giants Neck Beach Association Zoning Board of Appeals in that he was, and continues to the present time to be, the owner of the property which is the subject of the appeal which was denied by the Defendant Board." (Plaintiff's Appeal, June 16, 1994, para. 6.) Therefore, the plaintiff is aggrieved by the ZBA's decision to deny the plaintiff permission to build on lot 276.
Timeliness of Appeal
General Statutes § 8-8(b) provides that a party must commence an appeal within fifteen days from the date that notice of the decision is published. The plaintiff commences the appeal by serving process on the chairman of the board and the clerk of the municipality. General Statutes § 8-8(e).
The ZBA's decision was published in The Day on June 9, 1994. (ROR, Exhibit D.) On June 17, 1994, a deputy sheriff served the ZBA by leaving a true and attested copy of the citation, appeal and recognizance with Esther B. Williams, Town Clerk for the Town CT Page 2851-NNN of East Lyme. The sheriff also served Jane Franklin, Chairwoman of the ZBA, with a true and attested copy of the citation, appeal and recognizance on June 18, 1994. Therefore, the plaintiff commenced this appeal within 15 days of publication by serving the ZBA on June 17 and 18.
SCOPE OF REVIEW
"In reviewing the actions of a zoning board of appeals . . . such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant." (Citations omitted; internal quotation marks omitted.)" Francini v. Zoning Board of Appeals, 228 Conn. 785,791, 639 A.2d 519 (1994).
"It is well settled that a court, in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own." (Internal quotation marks omitted.) ConnecticutResources Recovery Auth. v. Planning Zoning Commission,225 Conn. 731, 744, 626 A.2d 705 (1993). "The trial court must uphold the board's decision if it is reasonably supported by the record." Id. "It is the [zoning] board's responsibility, pursuant to the statutorily required hearing, to find the facts and to apply the pertinent zoning regulations to those facts." Casertav. Zoning Board of Appeals, 226 Conn. 80, 90, 626 A.2d 744
(1993).
Where the zoning authority has not provided the reasons for its decision, the court must review the record to determine whether the decision is supported thereby. A.P.W. Holding Corp.v. Planning and Zoning Board, 167 Conn. 182, 186, 355 A.2d 91
(1974). In this appeal, the ZBA did not collectively explain the grounds for its decisions. Therefore, the court must review the entire record to determine if there are sufficient facts to support the ZBA's decision.
In this appeal, the court must determine if the ZBA reasonably interpreted their zoning regulations and correctly CT Page 2851-OOO applied them to the plaintiffs lot. The question of whether a particular statute or regulation applies to a given set of facts is one of statutory interpretation, with the full panoply of rules of construction to aid the court. Plastic Distributors,Inc. v. Burns, 5 Conn. App. 219, 225, 497 A.2d 1005 (1985). "In the construction of statutes and regulations, great deference is to be accorded the construction of the statute by the agency charged with its enforcement." Roy v. Centennial Ins. Co.,171 Conn. 463, 473, 370 A.2d 1011 (1976). "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of its legal discretion, whether a particular section of zoning regulations applies . . . and the manner in which it does apply." (Internal quotation marks omitted: alterations in original.) Schwartz v.Planning and Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339
(1988).
The interpretation of a provision in a zoning ordinance, however, is a question of law for the court, and the court is not bound by the legal interpretation of the ordinance by the town.Coppola v. Zoning Board of Appeals, 23 Conn. App. 636, 640,583 A.2d 650 (1990). A zoning regulation is a local legislative enactment, and in its interpretation the court is to discern the intent of the legislative body as manifested in the words of the regulation. Spero v. Zoning Board of Appeals, 217 Conn. 435, 441,586 A.2d 590 (1991). "Since zoning regulations are in derogation of common law property rights, . . . the regulation cannot be construed beyond the fair import of its language to include or exclude by implication that which is not clearly within its express terms." Id. The words used are to be interpreted in accordance with their natural and ordinary meaning; common sense must be used in construing the regulation, and the court assumes that a rational and reasonable result was intended by the local legislative body. Id.
PARTIES' ARGUMENTS
Specifically, the plaintiff argues that the ZBA acted illegally, arbitrarily and in abuse of its discretion in upholding the Zoning Commission's decision because that decision was based on an unreasonable and irrational interpretation of the regulations. The plaintiff further argues that the ZBA's Chairperson did not act in an impartial or neutral manner at the hearing. CT Page 2851-PPP
I. "Single and Separate Ownership"
The plaintiff contends that he should be permitted to build on lot 276 because the savings provision in § 4003 of the zoning regulations applies. In order to obtain the protection of § 4003, lot 276 must have been a lot under single and separate ownership prior to and at the time the zoning regulations were adopted. (ROR, Exhibit I.) The plaintiff contends that the Zoning Commission's interpretation of § 4003 was not based on a rational or reasonable interpretation of the zoning regulations and, therefore, since the ZBA upheld its decision, the ZBA's interpretation is also unreasonable. According to the plaintiff, the Zoning Commission found that the plaintiff's lot was not a lot under § 4003[4] since § 1305 defines a lot as a "parcel of land occupied or capable of being occupied by one principle building . . ." (ROR, Exhibit I.) The plaintiff states that the Zoning Commission found that his parcel is not capable of being occupied because it does not meet the minimum area requirements and thus, the parcel cannot be considered a lot under the zoning regulations. Because the parcel cannot be considered a lot, the land does not fall within the protection provided by § 4003. The plaintiff argues that this interpretation is unreasonable since in order to obtain the protection under § 4003 a lot must meet all of the zoning regulation's requirements, and because a parcel meeting all of the requirements does not need the protection granted to it under § 4003, the Zoning Commission's interpretation renders § 4003 meaningless.
The plaintiff contends that his parcel is a single lot and separately owned since the land possesses its own separate deed. At the hearing, Attorney Royston, Ranelli's attorney, argued that the savings provision in section 4003 protects lot 276 because at the time of the adoption of the zoning regulations, the Coiros separately owned this lot under a separate deed, satisfying § 4003's single and separate ownership requirement. (ROR, Exhibit H, pp. 13-14.) Attorney Royston contended that since Coiro owned lot 276 under a separate deed and Ranelli purchased lot 276 from the Coiros, the lot was separately owned and continues to be separately owned: therefore, § 4003 applies to lot 276 (ROR, Exhibit H, pages 13-14.) Attorney Royston explained, "[t]hat if I owned a piece of property in Glastonbury and I own a piece of property in East Lyme, my name alone, are those properties in the same ownership? My answer is yes. The same person owns that piece CT Page 2851-QQQ in Glastonbury and they own that piece down in East Lyme; are they in separate ownership, I say they are. I say that the piece in Glastonbury has, is entirely separate from my piece in East Lyme. It is separate although I am the same owner." (ROR, Exhibit H, p. 29.)
Furthermore, the plaintiff argues that the definition of lot that should be used is the definition contained in the zoning regulations that existed before the enactment of the 1987 regulations because § 4003 refers to lots that existed prior to the adoption of the 1987 regulations. According to the plaintiff, his parcel is considered a lot under the previous regulations. In addition, the plaintiff argues that § 4003 did not require a merger of lots 277 and 276 at the time of the zoning regulation's adoption.
The ZBA argues that prior to, and at the time of, the adoption of the 1987 regulations, the plaintiffs land was not separately owned since the Coiros owned both parcels. Accordingly, the ZBA contends that § 4003 required a merger of both parcels when the Board of Governors adopted such regulations. Furthermore, the ZBA argues that there are sufficient facts on the record supporting a finding that the Coiros themselves merged both lots before the adoption of the zoning regulations in 1987.
II. Impartiality of Chairwoman Franklin
The plaintiff also argues that Chairwoman Franklin, the ZBA's chairperson, failed to exercise impartiality and neutrality during the hearing because of certain activities that she engaged in prior to the hearing. According to the plaintiff, Chairwoman Franklin performed outside research concerning the appeal and therefore, she decided the issue before the plaintiff argued his case.
The ZBA contends that Chairwoman Franklin acted impartially at the hearing. According to the ZBA, the law in Connecticut allows members of the ZBA to do their own outside research concerning any matter brought before them.
DISCUSSION
1. "Single and Separate Ownership" CT Page 2851-RRR
In order to obtain the protection of § 4003, a parcel of land must have been a "single lot under separate ownership" prior to the adoption of the zoning regulations and the parcel must have continued to remain a "single lot under separate ownership" after the adoption of the zoning regulations. (ROR, Exhibit I.) "Under many zoning ordinances, where a lot became substandard by virtue of the passage of more restrictive zoning regulations, and where that lot was at the time of the passage of that legislation under common ownership with that of an adjacent lot, such zoning regulations have refused to continue to recognize the separate validity of that lot. The common exception of lots which were recorded prior to the effective date of a restrictive ordinance is limited to lots which were in single and separate ownership on that date. Under such a provision, an owner is entitled to an exception only if his lot is isolated. If the owner of such a lot owns another lot adjacent to it, he is not entitled to an exception. Rather, he must combine the two lots to form one which will meet, or more closely approximate, the frontage and area requirements of the ordinance." (Internal quotation marks omitted.) Neumann v. Zoning Board of Appeals, 14 Conn. App. 55,60, 539 A.2d 614 (1988), cert. denied, 208 Conn. 806,545 A.2d 1103 (1988). "Whether a zoning ordinance requires that two commonly owned and adjacent lots be merged in this fashion does not, however, depend on the mere absence of a merger clause. That intent can best be ascertained from an examination of the entire ordinance." (Internal quotation marks omitted.) Id.
The zoning regulations at issue do not specifically require a merger of the two parcels and they do not define the term "single and separate ownership." (ROR, Exhibit I, § 4003.) Section 4003 does state that "[a] lot so existing in separate ownership or a group of adjacent lots so existing under the same ownershipof record may be subdivided . . ." (Emphasis added.) (ROR, Exhibit I.) This phrase indicates that separate ownership refers to a parcel of land owned by a separate person and not just a parcel separately recorded. The zoning regulations recognize the difference between those lots owned separately and those lots owned by the same person since in order to subdivide a protected lot an owner who owns an adjacent lot must combine both lots unlike the owner of an isolated lot who may subdivide that single lot. Accordingly, since section 4003 differentiates between those lots owned by separate individuals and those lots owned by the same person, separate ownership under § 4003 refers to separate people and not separate deeds. Therefore, since NeumannCT Page 2851-SSSv. Zoning Board of Appeals indicates that single and separate means isolated lots owned by separate people and because the language in § 4003 indicates that separate ownership means a lot owned by a separate person, the ZBA could have reasonably concluded that their regulation defines single and separate ownership as an isolated lot owned by a person who does not own any adjacent lots.
The Coiros did not separately own lots 276 and 277 in 1987 at the time of the adoption of the relevant zoning regulations, because they were the same owners and not separate owners of the adjacent lots. Therefore, the court finds that lot 276 merged with lot 277 as a result of the adoption of the regulations in 1987, because at that time, lot 276 became an unprotected nonconforming lot which had to be merged with the Coiros' adjacent lot.
Furthermore, the ZBA heard evidence regarding whether the Coiros physically merged lots 276 and 277. "A merger can occur . . . if the owner of contiguous parcels of land intends to form one tract. The owner's intent may be inferred from his conduct with respect to the land and the use which he makes of it." (Internal quotation marks omitted.) Iannucci v. Zoning Boardof Appeals, 25 Conn. App. 85, 89, 592 A.2d 970 (1991) (finding that a merger occurred because the landowner owned adjacent parcels and built a house that crossed over the property line of one parcel onto the other); see also Torsiello v. Zoning Board ofAppeals, 3 Conn. App. 47, 51, 484 A.2d 483 (1984) (explaining that the plaintiff merged his two adjacent lots because he cleared the adjacent lot, planted grass on it, and mowed, raked and kept up the lawn as part of his other adjacent lot).
The ZBA received Ludwig Coiro's affidavit concerning his actions and intent surrounding lots 276 and 277. (ROR, Exhibit 7.) According to Coiro, "[i]n the fall of 1961, I bought a lot at Giants Neck Beach from Mr. and Mrs. Frank Schirmer. We built a house on that lot which was completed sometime in 1962." (ROR, Exhibit 7, para. 3.) In the late 1960's, Coiro contacted Smith about buying the adjacent lot. (ROR, Exhibit 7, para. 5.) Coiro stated that "[a]t the time I bought the lot, I had no present intention to build on it. However, it was my wish that in the future one of my children could build on it." (ROR, Exhibit 7, para 6.) Coiro then stated, "[a]fter I bought the lot I started filling it in the early 1970's. Some of the fill was taken from the front of the lot, and other fill was trucked in. The filling CT Page 2851-TTT was a slow process over a period of time . . . The purpose of this filling was to level out the lot so that it would be at roughly the same elevation as my existing cottage lot." (ROR, Exhibit 7, para. 7.) Coiro further indicated, "[a]t no time did I ever intend to merge the two lots into one, or to use them or treat them as a single lot . . . In fact, when water came in, I paid for a water connection for two lots . . . Also, in the early 1980s, the Town combined the two lots for tax purposes. Since I did not want the lots to be merged, I went down to the Town Hall and had them separated again." (ROR, Exhibit 7, paras. 8-10.)
The ZBA also received into the record copies of summaries of the tax bills assessed and paid to the Town of East Lyme by the Coiros from 1969 until 1983. (ROR, Exhibit 18: East Lyme Real Property Tax Payment Records of Ludwig and Julie Coiro, Grand Lists of 1974-1983.) (ROR, Exhibit 19: G.N.B.A. Real Property Tax Payment Records of Ludwig and Julie Coiro, Grand Lists of 1969-1986.) Both exhibits indicate that the Town of East Lyme provided the Coiros with a single tax bill from 1969 to 1981. According to exhibits 18 and 19, the Coiros did not request the Town of East Lyme to treat each lot separately until 1981.
Chairwoman Franklin of the ZBA also observed on the record that a hedge "encloses . . . virtually the entire property from I think very close to the driveway along Giants Neck Road and then down the side line nearest the Association West Beach side of that adjoining lot . . ." (ROR, Exhibit H, p. 24.) Attorney Royston countered that the existence of the hedge itself did not indicate that the Coiros intended to treat the lots as a single lot. (ROR, Exhibit H, p. 24.) Rather, Attorney Royston explained that the hedge was put there in order to keep people from going onto the vacant lot or throwing material on the lot since the lot was located next to the road. (ROR, Exhibit H, pp. 24-25.)
Although Coiro's affidavit explains that he never intended to merge both lots and that he paid for a separate water connection to the adjacent vacant lot, the affidavit explains that he filled in the lot so that it would be level with his adjacent lot. (ROR, Exhibit 7, para. 7.) Furthermore, the tax records indicate that the Town of East Lyme assessed the taxes on both lots in a single bill from 1969 to 1981. (ROR, Exhibits 18 and 19.) Coiro did not request the Town of East Lyme to separate both lots for tax purposes until 1981. (ROR, Exhibits 18 and 19.) Additionally, the record indicates that a single hedge encloses both lots. (ROR, Exhibit H, p. 24.) Since the court cannot weigh the evidence when CT Page 2851-UUU reviewing the ZBA's decision but must only find whether any evidence exists supporting the ZBA's decision, the above facts support a finding that Coiro intended to treat both lots as a single lot. Accordingly, the court finds that at the time of the adoption of the zoning regulations, lot 276 was merged with lot 277. Coiro then split lot 276 off of his single lot and sold the nonconforming lot to the plaintiff in 1987, after the adoption of the relevant zoning regulations. Since Coiro merged and then split lot 276 off of his single lot, at the time of the adoption of the zoning regulations and after their adoption, lot 276 was not under single and separate ownership as defined in § 4003.
II. Impartiality of Chairwoman Franklin
The plaintiff also argues that Chairwoman Franklin did not act in an impartial and neutral manner at the hearing because she engaged in outside research activities. (Plaintiffs Memorandum of Law, December 15, 1994, p. 9.) The ZBA counters by stating that the law allows members of the ZBA to base their decisions on their own personal observations of the property. "Neutrality and impartiality of members are essential to the fair and proper operation of a planning and zoning commission." Cioffoletti v.Planning Zoning Commission, 209 Conn. 544, 553-54, 552 A.2d 796
(1989). "The evil to be avoided is the creation of a situation tending to weaken public confidence and to undermine the sense of security of individual rights which the property owner must feel assured will always exist in the exercise of zoning power." (Internal quotation marks omitted.) Id., 554. "This issue involves a question of fact and the burden of proving the illegality [is] on the [plaintiff]." Id., 555. When faced with allegations of prejudice or prejudgment, the court is required to find that the member "actually had made up [her] mind prior to the public hearing, regardless of any arguments that might have been advanced at the hearing." (Citations omitted; internal quotation marks omitted.) Woodburn v. Conservation Commission,37 Conn. App. 166, 175, 655 A.2d 764 (1995). Members of the ZBA are, however, permitted to use their own knowledge acquired through personal observation of the property. Torsiello v. Zoning Boardof Appeals, 3 Conn. App. 47, 51, 484 A.2d 483 (1984).
The plaintiff fails to cite any specific acts that would indicate that Chairwoman Franklin failed to act as an impartial member of the ZBA. Furthermore, the plaintiff fails to demonstrate that Chairwoman Franklin had made up her mind prior to the hearing. In the absence of any evidence that Franklin CT Page 2851-VVV failed to act in a neutral or impartial manner, or that she had made up her mind prior to the hearing, the plaintiff has failed to meet his burden.
CONCLUSION
For the foregoing reasons, the plaintiff's appeal is dismissed.
MARTIN, J.