LOREN YOUNG MUNROE ET AL. *v.* ZONING BOARD
OF APPEALS OF THE TOWN OF BRANFORD ET AL.
(AC 19672)

Foti, Bishop and Dupont, Js.

Argued October 16, 2002—officially released April 1, 2003

*William F. Gallagher*, with whom, on the brief, were *Hugh D. Hughes* and *Roger M. Sullivan*, for the appellants (plaintiffs).

*Timothy J. Lee*, with whom, on the brief, was *Leonard A. Fasano*, for the appellee (named defendant).

*Opinion*

DUPONT, J. The plaintiffs[1] appeal from the judgment of the trial court affirming the dismissal of their appeal by the defendant zoning board of appeals of the town of Branford (board).[2] In dismissing the plaintiffs' appeal, the board upheld the zoning enforcement officer's (zoning officer) granting of a certificate of zoning compliance (certificate) to the defendant Thomas Simjian[3] and found that it did not have the authority to act on the appeal from the building official's renewal of Simjian's building permit (permit).

On appeal to this court, the plaintiffs claim that the court improperly affirmed the board's decision to dismiss the appeal because the board (1) did not conduct a de novo review of § 5.7 of the Branford zoning regula-

[1] The plaintiffs are Loren Young Munroe, Patrick Munroe, Marci T. Palluzzi and John D. Palluzzi.

[2] This case previously was before this court in *Munroe* v. *Zoning Board of Appeals*, 63 Conn. App. 748, 778 A.2d 1007 (2001), rev'd, 261 Conn. 263, 802 A.2d 55 (2002). The appeal was filed after we granted the plaintiff's petition for certification. We did not reach the issues involved in the appeal because we concluded that subject matter jurisdiction was lacking. The Supreme Court, however, concluded that there was subject matter jurisdiction, and reversed this court's judgment and remanded the case for our consideration of the issues. *Munroe* v. *Zoning Board of Appeals*, 261 Conn. 263, 802 A.2d 55 (2002).

[3] The property of the plaintiffs abuts Simjian's property.

tions[4] and (2) refused to review the action of the town building official's issuance of a permit.[5] We conclude that the appeal should not have been dismissed and reverse the judgment of the trial court.

The following facts and procedural history are relevant to our discussion of the present appeal. Simjian owned a parcel of property at 9 Etzel Road in Branford, on which there is a freestanding garage. The garage is a nonconforming structure under the zoning regulations because its footprint does not conform to area setback regulations. On May 1, 1997, Simjian applied for a certificate and a permit to extend his garage vertically by adding a second story. On August 26, 1997, the zoning officer, Justine K. Gillen, issued a certificate. In making her decision, Gillen relied, in part, on a 1987 letter of town attorney Norbert Church, who opined that a vertical expansion within an existing first floor footprint is not an increase in nonconformity under § 5.7, and, therefore, the certificate could issue without a variance.[6]

---

[4] Section 5.7 of the Branford zoning regulations provides: "Enlargement: No nonconforming use of land shall be enlarged, extended or altered, and no building or other structure or part thereof devoted to a nonconforming use shall be enlarged, extended, reconstructed or structurally altered, except where the result of such changes is to reduce or eliminate the nonconformity. No nonconforming use of a building or other structure shall be extended to occupy land outside such building or other structure or space in another building or other structure. No nonconforming building or structure shall be enlarged, extended, reconstructed or structurally altered, if the result would be an increase in nonconformity."

[5] The issuance and renewal of the permit was contingent on, and directly followed, the issuance of and failure to revoke the certificate. Because we conclude that the certificate should not have been issued, and should now be revoked, it is unnecessary to consider whether the board had the authority to hear the plaintiffs' appeal from the building official's action to renew the permit.

[6] In the summer of 1997 a successor town attorney, Leonard A. Fasano, had advised officials orally that a vertical addition to a nonconforming building is an expansion under § 5.7 and, therefore, requires a variance before a certificate can issue. Gillen never received that oral communication.

On September 8, 1997, the town's building official issued the requested permit, which automatically followed the issuance of a certificate. This permit by its terms lapsed on March 8, 1998, because Simjian had not started construction within six months of issuance[7] and the permit had not been renewed.

On March 13, 1998, the new town attorney, Penny Bellamy, issued a memorandum that interpreted § 5.7 for the third time. In her memorandum, she determined that a vertical addition to an existing, nonconforming structure is an increase in nonconformity and, thus, is prohibited under § 5.7 of the zoning regulations unless a variance is obtained. This interpretation negated the Church interpretation and followed the interpretation that had been made in 1997 by a previous town attorney, Leonard A. Fasano, who also determined that a vertical addition to a nonconforming structure is an expansion under § 5.7 that requires a variance. See footnote 6.

On April 2, 1998, Simjian submitted a second application for a permit to the building official and began demolition of the garage roof that day to begin construction. The plaintiffs, on that same day, spoke with Gillen to notify her of a possible zoning infringement because of the Bellamy memorandum. Gillen refused to revoke the certificate, which had issued on August 26, 1997, and had an unlimited duration. Thus, because there was a valid certificate, the building official acted on Simjian's second application and issued a new permit on April 7, 1998.

Contesting the issuance of the certificate and the permit, the plaintiffs appealed to the board. On May 19, 1998, the board held a hearing and, by a four to one

[7] Section 113.2.1 of the state building code provides in relevant part: "Any permit issued shall lapse if the building official finds that the authorized work was not started within a period of six (6) months after the permit was issued . . . ."

vote, denied the plaintiffs' appeal because it found that Gillen was "acting consistently with the law and the rules as she knew them at the time" when she issued, and refused to revoke, the certificate.

The plaintiffs appealed from that decision to the Superior Court, alleging that the board had acted illegally, arbitrarily and in abuse of its discretion in several respects.[8] The Superior Court affirmed the board's decision. The issue, according to the court, was framed by first determining what the board was asked to decide. According to the court, the plaintiffs were asking the board, when reviewing Simjian's application for a certificate, to apply the current town attorney's interpretation of § 5.7, which was in effect at the time the plaintiffs asked Gillen to revoke the certificate, instead of the interpretation of a former town attorney. In its memorandum of decision, the court found that the board did not consider Fasano's oral interpretation of § 5.7 binding as to Simjian's application for a certificate and, therefore, that Gillen was correct to rely on the opinion of Church when issuing the certificate.[9]

The court concluded that the board had the authority to decide the manner in which a regulation applies and, therefore, refrained from interpreting § 5.7 of the zoning regulations. It also concluded that the board had conducted a proper de novo hearing and did not act illegally, arbitrarily or in abuse of its discretion when it denied the plaintiffs' appeal.

---

[8] In their brief to the trial court, the plaintiffs claimed that the board did not apply to the issues before it the proper de novo standard of review, failed to act on the appeal of the issuance of the permit, failed to interpret correctly the regulations at issue and reached a decision not supported by the evidence or the law.

[9] The court did not consider the fact that when the zoning officer was asked by the plaintiffs to revoke the certificate the new town counsel had agreed with town attorney Fasano and disagreed with town attorney Church as to the interpretation of § 5.7.

The plaintiffs essentially claim that neither the board nor the court applied the proper standard of review. In addressing this claim, we first set forth the applicable standard of review for an appeal to the board. The board conducts a de novo review on an appeal from a decision of the zoning officer. *Caserta* v. *Zoning Board of Appeals*, 226 Conn. 80, 88–89, 626 A.2d 744 (1993).

The board "is in the most advantageous position to interpret its own regulations and apply them to the situations before it." (Internal quotation marks omitted.) *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 603, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002). It is, therefore, "entrusted with the function of interpreting and applying [its] own zoning regulations." (Internal quotation marks omitted.) *Borden* v. *Planning & Zoning Commission*, 58 Conn. App. 399, 411, 755 A.2d 224, cert. denied, 254 Conn. 921, 759 A.2d 1023 (2000). "Generally, it is the function of a zoning board . . . to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 697, 784 A.2d 354 (2001).

The town first argues that this standard is inapplicable because the issue before the board was not the legal interpretation of § 5.7, but whether the zoning officer, having relied on Church's interpretation, rather than Fasano's or Bellamy's, was using the interpretation applicable at the time she issued, and at the time she subsequently refused to revoke, Simjian's certificate. The town argues that this is a discretionary decision requiring the court, as it correctly did, to determine only if the board's decision was unreasonable, arbitrary or illegal. The court agreed with the town and, thus, did not conduct an independent interpretation of § 5.7.

The court decided only that the board had conducted a sufficient de novo review and reasonably had endorsed the zoning officer's issuance of the certificate, which followed the Church interpretation.

The issue before the board was whether a variance was required to expand vertically an existing, nonconforming structure, in this case, Simjian's garage.[10] That issue depended on the interpretation of § 5.7. While there were certainly questions regarding what the existing and applied interpretation of § 5.7 was at the relevant times, in ultimately resolving the issue before it, the board was required to interpret independently § 5.7 and to apply its interpretation to the facts of this case. It is the function of a zoning board to decide whether a particular section of the zoning regulations applies. See *Caserta* v. *Zoning Board of Appeals*, supra, 226 Conn. 90; *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 603–604.

The plaintiffs claim that the board did not interpret § 5.7 at all, but simply approved the zoning officer's decision. The town contends that the board did interpret the regulation by deciding, as a policy matter, that no variance was needed in this case to extend vertically a preexisting, nonconforming structure. The town argues that the court properly deferred to the board when it concluded that the interpretation of § 5.7 is a policy decision left to the board's discretion.

The board, in rendering its decision, essentially applied the zoning officer's interpretation, which relied on Church's interpretation, of § 5.7. The board did not render its own independent interpretation of § 5.7 as it was required to do. A determination by the board that a certificate was issued because of a policy existing at

---

[10] "The issue is . . . whether you need a variance to go up on the same footprint as of September of this year or as of the time when, April, this permit got renewed."

the time of issuance is not the equivalent of an interpretation of a regulation necessary to resolving the rectitude of issuance. In rendering its decision, the court did not have an interpretation of § 5.7 by the board to review.

"[O]n appeal from [the] zoning board's application of [a] regulation to [the] facts of [a] case, [the] trial court must decide whether the board correctly interpreted the regulation and applied it with reasonable discretion." (Internal quotation marks omitted.) *Wood* v. *Zoning Board of Appeals*, supra, 258 Conn. 698. "[C]ourts should accord great deference to the construction given [a] statute by the agency charged with its enforcement." (Internal quotation marks omitted.) *Cimochowski* v. *Hartford Public Schools*, 261 Conn. 287, 296, 802 A.2d 800 (2002).

We do not have for review the board's independent interpretation of § 5.7. We therefore have no interpretation by the board to which either we can, or the trial court could have, deferred. In any case, we would not be bound by such an interpretation, which is a question of law, requiring plenary review. *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 604. It is our job, as an appellate court, to construe the relevant zoning regulation because, with or without the benefit of a review of the language of § 5.7 by either the board or the trial court, the outcome of this appeal eventually will depend on a legal interpretation of the regulation by an appellate court.[11] See id., 603. We therefore con-

---

[11] The defendants do not offer any argument as to the interpretation of the regulations beyond arguing that the zoning officer had followed the interpretation of the regulation that the board previously had followed. The plaintiffs do not offer an expansive argument in their brief as to the interpretation of § 5.7, and seek a remand to the trial court for its consideration of the interpretation and application of the pertinent zoning regulations. The plaintiffs, in the trial court, argued in their brief that the zoning regulations of the town prohibited the vertical expansion of a building, nonconforming as to its setbacks, in the absence of a variance. The plaintiffs' petition for certification to appeal, which was filed in this court, asked for

duct our own de novo review of § 5.7 without the usual initial interpretation of the board.

"[A] local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances." (Internal quotation marks omitted.) Id., 604. In interpreting a zoning ordinance, "the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words [employed] are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant. . . . Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." (Citation omitted; internal quotation marks omitted.) Id., 604–605.

In interpreting the zoning regulations at issue in this case, we read the regulations as a cohesive whole. Section five of the zoning regulations is entitled "Nonconformity." Section 5.1 provides: "Intent: It is the intent of these Regulations that nonconformities are not to be expanded, that they should be changed to conformity as quickly as the fair interest of the owners permit and

a review of (1) whether the zoning regulations were violated by the issuance of a certificate without a variance, and (2) whether the board improperly had failed to conduct a de novo review of the zoning officer's issuance of the certificate. The plaintiffs characterized these questions as of "great public importance." Because appellate analysis by this court or the Supreme Court must be had eventually, assuming another appeal is heard by either court after an interpretation by the trial court, we see no purpose in remanding a case that already is more than five years old. The interests of judicial economy would not be served by a remand. See *Almeida* v. *Liberty Mutual Ins. Co.*, 234 Conn. 817, 826, 663 A.2d 382 (1995). In view of the foregoing, we have determined that in this case, we can properly interpret the regulation without the benefit of an interpretation by the board.

that the existence of any existing nonconformity shall not of itself be considered grounds for the approval of a variance for any other property." Section 5.1 requires us to read § 5.7 narrowly because the town's intent, as expressed in § 5.1, is to eliminate nonconformity as quickly as possible.

Other sections of the regulations reinforce our view that § 5.7 should be read narrowly. Section 5.8 provides that no nonconforming structure shall be moved unless it reduces or eliminates nonconformity. Section 5.9 prohibits changing a conforming use, previously nonconforming, back to a nonconforming use. Section 5.10 prohibits reconstruction or repair if a nonconforming building or structure is destroyed.

Section 5.7, itself, provides in relevant part: "No nonconforming building or structure shall be enlarged, extended, reconstructed or structurally altered, if the result would be an increase in nonconformity." A nonconforming building or structure, as provided in § 5.2, is one that existed lawfully on the date the zoning regulations became effective and that fails to conform to one or more of the zoning regulations. The nonconformity in this case is the location of the garage on the land, that is, the lack of conformity to the regulations because the footprint of the garage violates the setback requirements. The relevant question is whether the addition of a second story to Simjian's garage, which does not enlarge the existing ground level footprint, would be an extension, enlargement, reconstruction or structural alteration that increases the nonconformity.

In resolving this question, we primarily rely on an analysis of the particular language of the zoning regulations. "A determination as to whether an alteration, extension, reconstruction, or repair of a nonconforming structure . . . is permissible is dependent on, or is affected by, the particular provisions of the applicable

zoning ordinance . . . ." (Citation omitted.) Annot., 63 A.L.R.4th 275, 287 (1988). We also consult treatises and prior appellate cases for guidance.

We first consider what is embraced in the term "non-conforming use." "The term 'nonconforming uses' is often used without consideration as to what aspect of the use of property is nonconforming, and in determining whether an activity is an expansion or change of a nonconforming use, the nature of the nonconformity is important. There are basically four types of nonconformity: (1) nonconforming use—the use of the land or structure on it is nonconforming (e.g., commercial use in a residential zone); (2) a nonconforming lot—the lot is undersized, irregularly shaped, has inadequate width or depth or inadequate frontage; (3) nonconforming building or structure—the structure does not meet the minimum or maximum size requirements, floor area ratio, height or bulk requirements of the existing zoning regulations; (4) nonconformity as to location of struc-ture, i.e., it does not conform with one or more of the setback requirements. These distinctions are important because a particular piece of property may be noncon-forming in one of these respects, but conforming as to the others. The prohibition of expansion of noncon-forming uses applies only to the aspect of the use or structure which is nonconforming." R. Fuller, 9A Con-necticut Practice Series: Land Use Law and Practice (2d Ed. 1999) § 52.1, p. 548.

In this case, we are dealing with the fourth type of nonconformity, that aspect of use of land or property that relates to the location of the structure or building on the land and whether a second story addition to the building is an increase in that type of nonconforming land use. The change sought relates to an increase in the floor area of 400 square feet available for use with-out having changed the footprint of the building.[12]

---

[12] There is no issue in this case of whether the second story of the garage would enlarge its primary purpose as a garage. There was no claim that the

We turn next to the particular words of the zoning regulations.[13] Section 5.7 prohibits the structural alteration of a building if that alteration increases nonconformity. The interpretation of the words "structurally altered" depends on the ordinary meaning attributable to them based on common usage. See *Eastern Connecticut Cable Television, Inc.* v. *Montville*, 180 Conn. 409, 412, 429 A.2d 905 (1980). An alteration is commonly defined as a modification or change. A building or structure is a "constructed edifice designed to stand more or less permanently, covering a space of land, [usually] covered by a roof and more or less completely enclosed by walls" and serving a particular purpose. (Internal quotation marks omitted.) Id. The garage in this case fits the definition of a building. It may also be termed a structure. See *Hendryx Co.* v. *New Haven*, 104 Conn. 632, 639–40, 134 A. 77 (1926) (one definition of structure is something constructed or built). A structural alteration exists if a building would be changed into a different structure. See *Guilford* v. *Landon*, 146 Conn. 178, 183, 148 A.2d 551 (1959). We conclude that the addition of a second story is a structural alteration because the addition would convert the garage into a substantially different building. See *Marris* v. *Cedarburg*, 176 Wis.

addition, which was to be used as an exercise and storage area, would enlarge that purpose.

[13] Zoning regulations of other towns differ in their wording and scope from those of Branford. For example, the language of a zoning regulation recently interpreted in *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 597, differs significantly from that of the zoning regulation in the instant case. Prior cases are inapposite and unpersuasive because the zoning regulations that must be interpreted in them are markedly distinct from those regulations that are the subject of the case at hand. Id., 612 n.20. In *Doyen*, the regulations of the town of Essex did not include a prohibition against reconstruction or structural alteration and contained language implying that appurtenant structures are not necessarily expansions of nonconformity. *Doyen* determined that a five foot to six foot vertical expansion over an existing, nonconforming footprint of a deck on the side of a residence was not an expansion of a nonconformity as defined in the regulations of the town of Essex.

2d 14, 38, 498 N.W.2d 842 (1993). The question, thus, becomes whether that structural alteration would be an increase in nonconformity.[14] "Increase," as a noun, is usually defined as the act of becoming greater as to amount, number or intensity. Merriam-Webster's Collegiate Dictionary (10th Ed. 1995). With this definition in mind, we next examine appellate case law.

Scores of zoning cases deal with the first type of nonconforming uses of land, as defined in Fuller's treatise, as for example, a commercial use in a residential zone. Very few deal with expansions or enlargements of nonconformities relating to the land itself or to the location and area of a building on the land. We could find no Connecticut appellate case directly dispositive of the issue before us. Some Connecticut cases, however, are instructive in that they discuss what constitutes an increase in a particular type of nonconformity.

In *State* v. *Perry*, 149 Conn. 232, 235, 178 A.2d 279 (1962), the court held that the placement of a trailer on the defendant's land for use in the freezing and storing operations in his production of ice cream was an extension of a nonconforming use because it provided him with additional enclosed space not otherwise allowed by the zoning regulations of Stamford. At the time the zoning regulations were passed, there was an existing building on the defendant's premises, and all of the land, including the portions on which he placed

---

[14] Alterations that do not affect the size of a building and are limited to remodeling for appearance or efficiency are not usually considered structural alterations. 83 Am. Jur. 2d 580, Zoning and Planning § 674 (1992). We recognize that not all structural alterations involve a prohibited increase in nonconformity. Changes in the location of doors or windows or to the interior of the existing one story garage, for example, might be structural alterations that would pass muster as not enlarging the nonconformity of setback requirements. See *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn. 479, 484, 408 A.2d 243 (1979). Structural alterations, however, that enlarge the kind of business conducted on the premises may be an enlargement of that nonconforming use. *Guilford* v. *Landon*, supra, 146 Conn. 178.

the trailer, was used for the production of ice cream. Fuller, in his treatise, cites the case as standing for the proposition that the providing of additional enclosed space, although not a change in the type of use of the property, the manufacture of ice cream, was an extension of a nonconformity.

If there is no change in the type of nonconforming use, such as the rental of cottages, but a change in the period of time that the rental occurs, such as year round instead of seasonal, there has been a prohibited enlargement of the nonconformity. *Cummings* v. *Tripp*, 204 Conn. 67, 85, 527 A.2d 230 (1987). If there has been no change in the permitted use, such as a residence or a church, and no change in setback requirements, the renovation to the interior of an existing structure is not a prohibited enlargement of the nonconformity. *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn. 479, 483–84, 408 A.2d 243 (1979). The construction of a larger, single-family dwelling on a substandard lot with inadequate frontage to replace an existing dwelling on the lot, however, is an expansion of the nonconformity. *Neumann* v. *Zoning Board of Appeals*, 14 Conn. App. 55, 59, 539 A.2d 614, cert. denied, 208 Conn. 806, 545 A.2d 1103 (1988). The "proposed, larger house would clearly fail to meet [the] restrictions" that prohibit a nonconforming use from being extended or enlarged. Id.

The paucity of Connecticut decisional law on the precise issue of this case exists in other states. Few cases of which we are aware concern whether structural alterations that involve the addition of vertical floors to a building located on a nonconforming footprint are expansions of that nonconformity.

In *Lewis* v. *Maine Coast Artists*, 770 A.2d 644, 652–53 (Me. 2001), it was held that any modification or addition to a building that would increase the square footage

of nonconforming space of the building, even if the modification does not increase the linear extent of the nonconformity, increases the building's nonconformity. Likewise, the addition of a second story, an increase of eight to ten feet in the height of a building, is an expansion of the nonconformity of a setback requirement. *Devaney* v. *Windham*, 132 N.H. 302, 305–306, 564 A.2d 454 (1989); see also *Reddington Shores* v. *Innocenti*, 455 So. 2d 642, 643 (Fla. App. 1984).

Courts "have set forth a number of general rules where the nonconformity was based on . . . location or dimension . . . . The view has been expressed that a negligible and incidental enlargement of a structure is permissible but that a substantial and purposeful enlargement is not . . . ." Annot., 63 A.L.R.4th supra, 287–88.

Zoning regulations that deal with legal nonconforming uses of land or buildings balance two competing interests, the protection of individual property rights and the protection of the community's interest in a speedy elimination of the particular nonconformity. *Marris* v. *Cedarburg*, supra, 176 Wis. 2d 33. The landowner has an interest in making reasonable renovations to prevent deterioration, but the community has an interest in not extending the life of the nonconformity so that the nonconformity gradually will be eliminated. Id., 34. If a property owner is allowed to make drastic changes in a building, that interest would be favored over the interest of the community. Id.

Nonconformities prevent uniformity with surrounding areas and can affect the value of neighboring property. A vertical extension of a building by adding a second story can change and affect the amount of air or light between buildings and may detract from the aesthetic value of a neighborhood. The addition of a second story is not a negligible or cosmetic change

from the original nature of the nonconformity. The bulk of the building has been increased in quantity and dimension, thereby intensifying the nonconformity. The second story provides a significant additional amount of enclosed space within the confines of the noncon-forming footprint, causing a substantial increase in the nonconformity.

On the basis of the general goal of zoning law and the Branford regulations that nonconformities should be reduced to conformities with all the speed justice will tolerate; see *Neumann* v. *Zoning Board of Appeals*, supra, 14 Conn. App. 62; and the reasoning of the appellate authority in Connecticut and other states, we reverse the judgment of the trial court. The certificate should not have been issued to the defendant Simjian without a variance.

The judgment is reversed and the case is remanded with direction to sustain the plaintiffs' appeal and to order the defendant zoning board of appeals to revoke the certificate issued by the zoning officer.

In this opinion FOTI, J., concurred.

BISHOP, J., concurring in part and dissenting in part. I agree with my colleagues that the judgment of the trial court must be reversed because the defendant zoning board of appeals of the town of Branford (board) failed to exercise its independent judgment in determining whether the zoning enforcement officer had properly issued a certificate of compliance.

Having reached that conclusion, however, I would remand the matter to the trial court with direction that the appeal be sustained and the matter remanded, in turn, to the board for it to determine, de novo, the proper application of its zoning regulations to the proposed building addition. Instead, the majority has reached and decided the ultimate question of whether

the proposed building addition complies with the zoning regulations or would require a variance.[1]

In reaching this question I believe, respectfully, that the majority has usurped the role of the board in the name of judicial economy. I believe that it is inconsistent to say, on one hand, that the board should have exercised its responsibility to interpret its regulations independently, but, on the other hand, to take from that body the right to do so merely on the ground that this case may return to this court again.

Additionally, in its quest for efficiency, the majority has neglected our own jurisprudence concerning the authority of a zoning board of appeals to interpret its own regulations and abandoned the deference normally accorded to decisions of such boards. In *Fedorich* v. *Zoning Board of Appeals*, 178 Conn. 610, 424 A.2d 289 (1979), for example, the court affirmed the right of the zoning board of appeals to make a determination based, in part, on its past practices. In affirming the judgment of the trial court, the Supreme Court opined that "[t]he court . . . was entitled to accord considerable deference to the policy adopted by the defendant board in 1971, interpretive of [§] 105 of the [Torrington] zoning regulations . . . ." Id., 616. See also *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 440, 586 A.2d 590 (1991), in which the court concluded that to prevail on an appeal from a decision of a zoning board of appeals,

---

[1] In doing so, the majority appears to have deviated from our long-standing policy of not deciding issues that have not been briefed on appeal. See *State* v. *Torres*, 242 Conn. 485, 486–87 n.4, 698 A.2d 898 (1997); *National Associated Properties* v. *Planning & Zoning Commission*, 37 Conn. App. 788, 796–97 n.6, 658 A.2d 114, cert. denied, 234 Conn. 915, 660 A.2d 356 (1995). The primary issue on appeal was whether the trial court correctly determined that the board had exercised its independent judgment when considering the plaintiffs' appeal from the decision of the zoning enforcement officer to issue the certificate of zoning compliance to the defendant Thomas Simjian. None of the parties briefed the question the majority now answers.

the plaintiff must demonstrate that the board acted unreasonably, arbitrarily or illegally.

By preempting the board, the majority has prevented it from analyzing whether its past practices reflect an established policy concerning additions to nonconforming structures and determining under what circumstances the additions have been treated as increasing the nonconformity of the existing structure. The problem is exacerbated in this instance because, as the majority notes, there is no Connecticut appellate gloss of the regulatory language in question. While the majority has now determined for the first time that the proposed addition would constitute an increase in the nonconformity requiring a variance, I do not believe that this outcome would inevitably be the same if we had yielded to the board the opportunity to interpret its own regulations in light of its past practices regarding proposed additions to nonconforming structures.

It is not unreasonable to forecast that if the board conducts such an analysis and determines that no variance is required, a trial court could find that the board's determination was, in fact, reasonable. Because, on review, the decision of a board will be reversed only if it is found to be unreasonable, arbitrary or illegal, the majority has, by force of this decision, preordained that no other interpretation of the regulation in question could be reasonable, and it reached that conclusion without the benefit of the board's assessment of its past practices and policies regarding this precise issue.

In this circumstance, I would be inclined to give the board the first opportunity to interpret its own regulation. Even if the majority's concern is well founded and a remand of this case may result in its eventual reappearance before this court, I do not believe that its goal of judicial economy warrants denying the board

the opportunity to fulfill its responsibilities as we have determined them to be.

Accordingly, I concur in the reversal of the trial court's judgment dismissing the appeal from the decision of the defendant zoning board of appeals, but I respectfully dissent from this court's decision to determine itself whether the proposed building addition complied with the applicable zoning regulation and this court's direction to the trial court on remand.