## LENA M. JOHNSON *v.* BOARD OF ZONING APPEALS OF THE TOWN OF STRATFORD
### (12564)

LAVERY, FREEDMAN and SPEAR, Js.

Argued May 6—decision released September 6, 1994

*Carl E. Watt,* for the appellant (plaintiff).

*John A. Florek,* town attorney, for the appellee (defendant).

LAVERY, J. The issue in this appeal is whether an undeveloped lot, which was created prior to the adoption of zoning regulations and which complied with those regulations when adopted, is protected from later regulations that render it nonconforming. We answer in the negative and affirm the judgment of the trial court.

The plaintiff owns a plot of land fifty feet by approximately 107 feet located in a development on Wells Place in Stratford, and referred to as lot 19. Lot 19 was created when real property owned by Flora Deckand was subdivided in 1918. A map of the resulting fifty-two lots was accepted by the Stratford selectmen on March 4, 1918, and was recorded.

In 1927, Stratford adopted zoning regulations to which lot 19 conformed. In 1939, lot 19 was purchased by the owner of adjoining lot 18. Until that time, the two lots had been independently owned, separately taxed, and maintained as individual lots. In fact, separate sewer lines were run to each lot. Lot 18 was developed with a single-family house. Although there is some evidence that there had been a house on lot 19, the lot was undeveloped when purchased in 1939.

Stratford amended its zoning regulations in 1945 to require a minimum lot width of sixty feet, ten feet more than the width of lot 19. The plaintiff purchased lots 18 and 19 in 1985, and subsequently sold lot 18. Lot 19 is the last undeveloped lot of the original subdivi-

sion. The plaintiff, on five occasions, applied to the Stratford zoning board for a variance to permit her to construct a single-family residence on lot 19. Each petition was denied. The plaintiff appealed the last denial to the Superior Court. That appeal was dismissed without prejudice, however, because the court believed that the plaintiff should have sought a building permit rather than a variance. *Johnson* v. *Board of Zoning Appeals,* Superior Court, judicial district of Fairfield, Docket No. CV 90-0275682 (July 3, 1991).

On February 24, 1992, the plaintiff applied to the Stratford planning and zoning administrator for a certificate of zoning compliance in order to obtain a building permit for a single-family house on lot 19. The administrator denied the application on February 25, 1992, explaining that lot 19 did not conform to the zoning regulations and was not exempt from those regulations because (1) the selectmen did not act as a planning commission when they accepted the subdivision of Deckand's land, and (2) the selectmen did not possess the power to approve a subdivision of land.[1]

[1] The planning and zoning administrator's letter provided: "I have reviewed your application for a building permit and certificate of zoning compliance for [lot 19] and offer the following comments.

"(1) Lot 19 is located in an RS-4 District, which requires a minimum lot width of 60 feet. Lot 19 does not comply with Section 4.2 of the Zoning Regulations in that it has a lot width of only 50 feet.

"(2) On approximately five occasions applications to the Board of Zoning Appeals for variances of lot width and lot area were denied.

"(3) You have noted that this lot is shown on a map of Floral Park which was accepted and approved by the Selectmen of the Town of Stratford on March 14, 1918. In a legal memorandum from J. Roger Shull, former Assistance Town Attorney, dated June 12, 1989, the case of *Lebanon* v. *Woods,* [153 Conn. 182, 215 A.2d 112 (1965)], was cited, which stated that 'our Supreme Court held that selectmen are not an other body exercising the powers of a planning commission.' In the case of *Sherman[-Colonial Realty Corp.* v. *Goldsmith,* 155 Conn. 175, 230 A.2d 568 (1967)], it is stated that 'the mere filing of maps for subdivision of a parcel of real estate does not necessarily immunize the subject property from subsequent zoning regulations.' Therefore, since the map of Floral Park does not bear endorse-

Thus, because he believed that lot 19 was a nonconforming lot, the zoning administrator denied the application for a certificate of zoning compliance.

The plaintiff appealed the administrator's denial to the Stratford board of zoning appeals. The board sustained the administrator's decision on the same grounds as those set forth in the administrator's letter.

The plaintiff appealed to the Superior Court, claiming that lot 19 was exempt from the sixty foot requirement and that the board had unreasonably and arbitrarily denied her petition. In a thorough opinion, the trial court reviewed General Statutes § 8-26a[2] and found that the Stratford selectmen did not act as a planning commission in 1918, such that their acceptance of the subdivision map exempted lot 19 from compli-

---

ment of a Planning and Zoning Commission or other body exercising its powers, it is not an 'approved subdivision under Section 8-26a of the General Statutes and is not exempt from subsequent changes in the zoning regulations.

"(4) I have read House Bill 692 passed by the General Assembly in 1913, which was an Act Creating a Board of Finance in the Town of Stratford, Increasing the Powers of the Selectmen. While the overall powers of the Selectmen may have been broadened by this bill, it is my opinion that they were not broadened to encompass the subdivision of land.

"Therefore, in summary, Lot 19 is not in compliance with Section 4.2 of the Zoning Regulations and the required variances from the Board of Zoning Appeals for lot width were not obtained. In addition, this lot is not in an 'approved' subdivision under Section 8-26a of the General Statutes and, therefore, must comply with the Zoning Regulations currently in effect. House Bill 692 passed in 1913 did not grant the Selectmen the power to approve the subdivision of land.

"It is for the above reasons why I am denying the Application for a Certificate of Zoning Compliance for Lot 19 on Wells Place."

[2] General Statutes § 8-26a (b) provides: "Notwithstanding the provisions of any general or special act or local ordinance, when a change is adopted in the zoning regulations or boundaries of zoning districts of any town, city or borough, no lot or lots shown on a subdivision plan for residential property which has been approved, prior to the effective date of such change, by the planning commission of such town, city or borough, or other body exercising the powers of such commission, and filed or recorded with the town clerk, shall be required to conform to such change."

ance with subsequent zoning regulations. The trial court further found that lot 19 was not shielded from subsequent zoning regulations by General Statutes § 8-2[3] because the land had not been irrevocably committed to a particular use. The court concluded, therefore, that lot 19 did not conform to the applicable zoning regulations and that the board properly denied the plaintiff's petition.

We agree with the trial court's interpretation of § 8-26a. Subsection (b) of that statute shields from subsequent zoning regulations lots shown in a subdivision plan that was approved prior to the regulatory changes by the planning commission or other body exercising the powers of a planning commission. Approval of a subdivision plan by town selectmen acting in their capacities as selectmen cannot, however, be equated with approval by a planning authority. *Lebanon* v. *Woods,* 153 Conn. 182, 194, 215 A.2d 112 (1965). If, however, the Stratford selectmen exercised the powers of a planning commission when they adopted the map depicting lot 19, then lot 19 is shielded from the sixty foot requirement. Therefore, we must review the source of the planning authority wielded by the Stratford selectmen in 1918.

The Stratford selectmen could have derived their planning authority from only two sources: General Statutes (1918 Rev.) § 5125[4] and No. 264 of the 1913 Special Acts, as amended by No. 447 of the 1917 Special

---

[3] General Statutes § 8-2 provides in pertinent part: "[Zoning] regulations shall not prohibit the continuance of any nonconforming use . . . existing at the time of the adoption of such regulations. . . ."

[4] General Statutes (1918 Rev.) § 5125 provides: "The selectmen of any town, where there is no proprietors' committee of common and undivided lands, shall have the same power in regard to common and undivided lands, and the laying out and dividing the same, as proprietors' committees have; and their fees shall be paid by the person requesting their services."

Acts.[5] The former authorized the selectmen to divide and otherwise dispose of common lands. The latter authorized the selectmen to regulate building construction and demolition, and lay out public ways and grounds. Neither provided the selectmen with the authority to divide private property or otherwise act as a planning commission. Therefore, we agree with the trial court's assessment that the subdivision map of Deckand's property was not properly approved as required by § 8-26a (b). Lot 19 is not shielded from subsequent zoning regulations by that section.

We also agree with the trial court's interpretation of § 8-2. Merely recording a map of land prior to the advent of zoning regulations does not automatically exempt a nonconforming lot from subsequent regulations. *Sherman-Colonial Realty Corp.* v. *Goldsmith,* 155 Conn. 175, 183, 230 A.2d 568 (1967); *Lebanon* v. *Woods,* supra, 153 Conn. 194; *Corsino* v. *Grover,* 148 Conn. 299, 314, 170 A.2d 267 (1961). Where land is "irrevocably committed" to a particular use, however, § 8-2 will protect that *use* from the subsequent enactment of zoning laws. Because undeveloped land has not been "irrevocably committed" to any particular use, § 8-2 does not protect nonconforming, undeveloped lots. See *Sherman-Colonial Realty Corp.* v. *Goldsmith,* supra, 183; *Corsino* v. *Grover,* supra, 314. Local regulations may, however, provide such protection. *Archambault* v. *Wadlow,* 25 Conn. App. 375, 379–80, 594 A.2d 1015 (1991).

---

[5] No. 264, § 11, of the 1913 Special Acts, as amended by No. 447, § 1, of the 1917 Special Acts, provides in pertinent part: "The board of selectmen of the town of Stratford shall have power . . . to make and enforce rules and regulations concerning the disuse, removal and demolition of any building . . . to issue permits for the removal of buildings . . . to provide for laying out, establishing, grading, making, repairing, discontinuing or altering highways, streets . . . to prescribe the width of all highways, streets, sidewalks and gutters . . . ."

In this case, the applicable local zoning regulations do not protect lot 19 from the sixty foot requirement. Lot 19 was a conforming lot under the pre-1945 zoning regulations. Section 14.1 of the Stratford zoning regulations defines a nonconforming use as any use of a lot that does not conform to the regulations.[6] Although the regulations include in the definition of "lot" parcels of land that have not yet been developed,[7] the undeveloped property must be *used* to be protected as a nonconforming use. Because lot 19 was not in use when the sixty foot width requirement was adopted in 1945, it is not shielded from that requirement.

In reaching this conclusion, we note that merger does not apply to this case, even though lot 19 was jointly owned with lot 18 between 1939 and 1985. Contiguous land owned by the same person can merge into one lot if the owner so intends or the relevant zoning regulations so require. See *Iannucci* v. *Zoning Board of Appeals,* 25 Conn. App. 85, 89, 592 A.2d 970 (1991); *Neumann* v. *Zoning Board of Appeals,* 14 Conn. App. 55, 60, 539 A.2d 614, cert. denied, 208 Conn. 806, 545 A.2d 1103 (1988). Once merged, the lots form one lot that meets or more closely approximates the zoning requirements and the separate lots lose their exception for nonconformance. Thus, if merger applied to this case, lot 19 would have lost its character as a separate, nonconforming lot when it was purchased by the owner of lot 18.

---

[6] Section 14.1 of the Stratford zoning regulations provides in pertinent part: "A nonconforming use is a use of any lot or building which does not conform to the regulations applicable to the zone in which the same shall be located, but which legally existed at the effective date of these regulations or at the effective date of any amendment thereto or any change in the boundaries of any zoning district herein or hereafter established which creates the non-conformity. . . ."

[7] Section 1.24 of the Stratford zoning regulations defines a lot as, "[a] plot or parcel of land occupied or capable of being occupied by one principal building and the accessory buildings or uses customarily incident to it, including such open spaces, street frontage and parking as are required by these regulations."

That scenario, however, does not apply. The record reveals that throughout the history of lots 18 and 19, the owners have treated the lots as separate entities. We can divine nothing in the record that suggests that the owners intended to merge the property. See *Iannucci* v. *Zoning Board of Appeals,* supra, 25 Conn. App. 89 (owner's intent is inferred from conduct with respect to land). Moreover, the Stratford zoning regulations do not require merger explicitly and do not support an inference that merger was intended. See *Neumann* v. *Zoning Board of Appeals,* supra, 14 Conn. App. 60 (noting that merger can be derived from examination of entire zoning ordinance). Section 1.24 defines a lot as "[a] plot or parcel of land," and permits no inference that the term lot includes adjacent parcels of land under single ownership. Cf. id., 60–61. Thus, the unity of ownership did not merge lots 18 and 19.

This case is similar to *Kulak* v. *Zoning Board of Appeals,* 184 Conn. 479, 440 A.2d 183 (1981). Both *Kulak* and the present case dealt with a landowner seeking to build on an undersized lot, which was part of a subdivision created long before zoning. In both cases the lot conformed to the zoning requirements when they were first enacted and were rendered nonconforming by later regulations. In *Kulak*, our Supreme Court ruled that because the nonconformity was created by the zoning change and not by the actions of the owner, the owner could and should have sought a variance. Id., 482. Similarly, we conclude that the plaintiff in this case "has the . . . right to seek a variance and, if [her] request is supported in law, to obtain the variance." Id.

The judgment is affirmed.

In this opinion the other judges concurred.