[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The appellant, Volker Fritz, has appealed from a decision of the Roxbury Zoning Board of Appeals, denying a variance from the minimum lot size requirements of the Roxbury Zoning Regulations.
On March 13, 1997, Mr. Fritz filed an application with the ZBA seeking a variance of the minimum lot size requirements of the Town of Roxbury Zoning Regulations, Section 2.4.3, affecting the property located on East Flag Swamp Road, Roxbury, Connecticut. (Return of Record, Exhibit A-1, Fritz's Application to ZBA). In his application Fritz sought a variance in the amount of one and one half (1.5) acres so he could construct a single family house of approximately 1,000 square feet, on the one and one half (1.5) acre Roxbury portion of the parcel. (ROR, A-1).
Section 2.4.3 of the Roxbury Zoning Regulations requires that all lots in Residential Zone C have a minimum area of three (3) acres. (ROR, F-1, Zoning Regulations of the Town of Roxbury). The portion of the appellant's land located within Residential Zone C of Roxbury is claimed to be one and one half (1.5) acres and therefore does not conform with the three (3) acre requirement. (ROR, G-1 Transcript April 23, 1997 Public Hearing p. 1). The entire 3.5 acre parcel straddles the Roxbury/Southbury town line with 1.5 acres in Roxbury and approximately 2 acres in Southbury. (ROR, G-1, p. 4). A single-family residence stands on the Southbury section of this single parcel at 609 Flag Swamp Road, CT Page 1140 Southbury. (ROR, A-1).
The public hearing on the application was noticed for and held on April 23, 1997 with continued hearings on May 14, 1997, and June 11, 1997. (ROR, C-1, 2, 3, Notice of Public Hearing). At the hearing Mr. Fritz presented his proposal to the ZBA. (ROR, D-1, Minutes of April 23, 1997 Regular Meeting).
Following the close of the public hearing on June 11, 1997, the ZBA unanimously voted to deny Fritz's application for a variance of the minimum lot size requirements in Residence Zone C from three (3) acres to one and one half (1.5) acres, on the basis that there was no showing of hardship. (ROR, G-2, p. 15). Thereafter this appeal followed.
In reviewing the denial of a variance from the zoning board of appeals, such a board is endowed with a liberal discretion, and its actions are subject to review by the courts only to determine whether ". . . they were unreasonable, arbitrary or illegal. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . . In an appeal from the decision of a zoning board, we therefore review the record to determine whether there is factual support for the board's decision, not for the contentions of the applicant." Pleasant View Farms Development,Inc. v. Zoning Board of Appeals, 218 Conn. 265, 269 (1991).
It is well settled that a court in reviewing the actions of an administrative agency, is not permitted to substitute its judgment for that of the agency or to make factual determinations on its own. The trial court must uphold the board's decision if it is reasonably supported by the record. Connecticut ResourcesRecovery Authority v. Planning Zoning Commission,225 Conn. 731, 744 (1993).
The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached." DeBerardinis v. ZoningCommission, 228 Conn. 187, 198 (1994).
Generally a court of appeal should show great deference to the decision of a local zoning board. The discretion of the local board is a liberal one to be overturned only when the board has not acted fairly or has no valid reasons for acting as it did, or with improper motives. Horn v. Zoning Board of Appeals, CT Page 114118 Conn. App. 674, 676 (1989).
The board's action can be overturned only if the court determines that its judgment has been exercised in an "unreasonable, arbitrary or illegal manner." Florentine v.Darien, 142 Conn. 415, 426 (1955). In reviewing a land use decision, where reasons are given for the decision, the courts will "defer to the agency's discretion, and not hold it to perfect articulation of them." Fuller, Robert A., Land Use Lawand Practice. Connecticut Practice Series, § 30.3, page 519, West Publishing Co. 1993.
A zoning board of appeals' authority to grant a variance is found in Conn. Gen. Stat. Section 8-6(a)(3). That section states in pertinent part: "The zoning board of appeals shall have the following powers and duties . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured. . . ."
For a variance to be granted under General Statutes § 8-6(3), two conditions must be met: (1) the variance must be shown not to substantially affect the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship. Grillo v. Zoning Board ofAppeals, 206 Conn. 362 (1988); Adolphson v. Zoning Board ofAppeals, 205 Conn. 703, 705 (1988). If the use to be allowed by the variance is consistent with other uses in the area, the first segment of the variance test is met. Eagan v. Zoning Board ofAppeals, 20 Conn. App. 561, 564 (1990); Nelson v. Zoning Board ofAppeals, No. 31 09 62, (Super.Ct., J.D. of Danbury, June 30, 1993) (1993 Ct. Sup. (LOIS) 6367, 6370-71).
"An applicant for a variance must show that, because of some peculiar characteristic of his property, the strict application of the zoning regulation produces an unusual hardship, as opposed to the general impact which the regulation has on other properties in the zone. The hardship which justifies a board of CT Page 1142 zoning appeals in granting a variance must be one that originates in the zoning ordinance . . . and arises directly out of the application of the ordinance to circumstances or conditions beyond the control of the party involved." Kaesar v. Zoning Boardof Appeals, 218 Conn. 438, 445 (1991).
"It is well settled that the hardship must be different in kind from that generally affecting properties in the same zoning district, and must arise from circumstances or conditions beyond the control of the property owner." Pollard v. Zoning Board ofAppeals, 186 Conn. 32, 35, (1982). "Where the hardship involved arises as a result of a voluntary act by one other than the one whom the variance will benefit, the board may, in the exercise of its liberal discretion, grant the variance." Id. "Where the claimed hardship arises from the applicant's voluntary act, however, a zoning board lacks the power to grant a variance." Id.
 I
Based upon the facts and testimony presented before the ZBA, the ZBA reasonably concluded that conditions of the Fritz property failed to present a hardship sufficient to warrant the granting of the variance application.
As stated above, "For a variance to be granted under General Statutes § 8-6(3), two conditions must be met: (1) the variance must be shown not to substantially affect the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship. "Grillo v. Zoning Board of Appeals, 206 Conn. 362 (1988);Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 705 (1988).
The ZBA could have reasonably found the following facts. The Fritz parcel (according to Fritz but in contrast to the deed) contains 3.5 acres of land. (Statement of Facts, para. 8) "Two or so" acres of a single parcel are located in Southbury and one and one half (1.5) acres of the entire parcel are located in Roxbury. (Statement of Facts, para 8). The parcel has always been treated as a single lot with a total size of 3.5 acres. (Statement of Facts, para 9). A single family residence stands on the portion of the property located in Southbury. (Statement of Facts, para 13). The Roxbury portion of the property is located with Residence Zone C which calls for a minimum of three (3) acre lots. (Statement of Facts, para. 4). CT Page 1143
Fritz sought a variance of the 1.5 acres from the Town of Roxbury so he could build a second single-family home on the 3.5 acre parcel. (Statement of facts, para. 2). The second house would be located on the 1.5 acre portion of the parcel in Roxbury's Residence zone C. (Statement of Facts, para. 2).
Fritz's application for a variance is fatally flawed under the hardship requirement for two distinct reasons. First, he desires to create a non-conforming lot in the Town of Roxbury so he can add a second family dwelling to his parcel. (Statement of Facts, para. 2). Second, because the application was personal in nature and based on ascertaining a sense of "achievement." (Statement of Facts, para. 12).
Because Fritz already has a single family dwelling house on his property and because he is seeking to create a non-conforming lot solely for personal reasons, the hardship criteria is clearly not met. (Statement of Facts, paras. 12, 13). The Fritz property has been treated and sold as one parcel of property since the 1700's. (Statement of Facts, para. 9) In addition, there is already a dwelling house on the property, and the subject land should be considered a portion of the entire parcel. (Statement of Facts, para. 13). Based on the overwhelming amount of cases that define the requirements for a finding of hardship it is readily apparent that Fritz does not qualify under this prong of the test.
Based on the record and the testimony before the ZBA, the ZBA reasonably concluded that the parcel has always been and still is one parcel of land and not two separate and distinct lots. Counsel for Mr. Fritz testified before the ZBA that the subject parcel "has been all one parcel all of its time since it was split off from the land around it and that goes back to the 1700's." (Statement of Facts, para. 9). The appellant cites no authority for drawing the conclusion that a town line automatically severs property into two separate distinct lots. According to Mr. Fritz himself, the property has never been sold or treated as two distinct lots. (Statement of Facts, para. 9).
The ZBA properly focused upon the 1.5 acres of land located within Roxbury's Residence Zone C when considering whether to allow another single family dwelling house on that portion of the single parcel. Although the land is one parcel, the portion located in Zone C is still subject to the zoning regulations for that area. According to the Roxbury Zoning Regulations, the CT Page 1144 property located in Zone C would need to be three acres if a dwelling house was to be allowed. (Statement of Facts, para. 4).
The appellant suggests that the definition of lot within the Roxbury Zoning Regulations encourages using town lines as lot boundary lines. This is clearly not the case. The regulations provide the following definition for lot.
 20.42 Lot. A single parcel of land lawfully occupied or capable of being lawfully occupied by a building(s) and appropriate accessory uses, including such open spaces as required by these regulations and such other open spaces as are used in connection with the building(s) . . .
 b. For purposes of these Regulations a lot may or may not have boundaries identical with those recorded in the office of the Town Clerk of Roxbury.
(ROR-F). (Emphasis added.)
Mr. Fritz has already benefited from this definition. Mr. Fritz supplied the ZBA with a deed that shows the acreage of his property is actually only 3 acres and totally located in the Town of Southbury. (ROR, A-1). Yet it is clear from the assessor's map that 1.5 acres of Fritz's overall parcel is located in Roxbury. (ROR, A-1). It says nothing in relation to town lines as boundaries, however.
The appellant next attempts to argue that the change in the Roxbury Zoning Regulations subsequent to purchase should be a basis for granting the variance. Connecticut law is well settled on this matter.
In Johnson v. Zoning Board of Appeals of Town of Stratford,35 Conn. App. 820, 823 (1994), the issue was whether an undeveloped lot, which was created prior to the adoption of zoning regulations and which complied with those regulations when adopted, was protected from later regulations that rendered it nonconforming. The court concluded:
 Where land is `irrevocably committed' to a particular use, § 8-2 will protect that use from the subsequent enactment of zoning laws. CT Page 1145 However, the undeveloped property must be used to be protected as a nonconforming use. Id.
(Emphasis added).
Furthermore, To be a nonconforming use the use must be actual. It is not enough that it be a contemplated use nor that the property was bought for the particular use. The property must be so utilized as to be irrevocably committed to that use.Sherman Colonial Realty Corporation v. Goldsmith, 155 Conn. 175,179 (1967).
Fritz has not developed the 1.5 acre portion of the single parcel that is situated in Roxbury in any manner. (Statement of Facts, para. 10). Therefore, under Johnson since there is no irrevocable commitment to use, the subsequent zoning regulations put into effect after the initial purchase are in full force andeffect. (Emphasis added)
 II
Mr. Fritz has not demonstrated an unconstitutional taking of his property. The property currently has a single family dwelling house located on the premises. (Statement of Facts, para. 13). "We have held that zoning reclassifications can constitute an unconstitutional taking when they leave a property owner with no economically viable use of his land other than exploiting its natural state." Bauer v. Waste Management of Connecticut, Inc.,234 Conn. 221, 254-255 (1995).
Fritz has demonstrated no such taking. Since the property has not been divided, Fritz would need to demonstrate that the entire parcel was without an economically viable use. Id., at 254. The board recognized that Mr. Fritz makes reasonable use of his property because he is already using the residential parcel. The board was well aware of the single family dwelling house usage when it made its decision not to grant a variance and that denial would not amount to an unconstitutional taking. (ROR, G-2, p. 16).
For the reasons stated, the appeal is dismissed.
HON. WALTER N. PICKETT, JR. State Judge Referee CT Page 1146