[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These two administrative or record appeals of a decision by the defendant Zoning Board of Appeals of the city of Stamford (ZBA) were consolidated because they both pertain to the same property and to whether this particular property is a buildable lot. The ZBA affirmed a decision of the defendant zoning enforcement officer (ZEO), dated October 13, 2002, to issue a building permit to Robert Dorf and Frances F. Dorf, who were joined as defendants in this appeal. This building permit would enable Mr. and Mrs. Dorf to construct a residence on a lot they own at 411 Soundview Avenue, Stamford, also known as Wallacks Point, in the RA-1 zone, a single family one-acre residential district.[1]
After these two appeals were started in February of 2001, the Dorfs conveyed the subject lot on April 11, 2001 to Alistair Johnstone and Patricia Giordano Johnstone who were then substituted for the Dorts as defendants. The Dorfs, however, will be referred to as the defendants in this opinion. The plaintiff, Marie Ann Clifford Burns, resides at 36 Wallacks Drive, and the plaintiff, Daniel R. McLeod, resides at 444 Soundview Avenue.
The plaintiffs appealed the action of the ZEO granting a building permit to the Dorfs to the defendant ZBA in accordance with section 19.1.2 of the Stamford Zoning Regulations (regulations). As pointed out inSheridan v. Planning Board, 159 Conn. 1, 4, 266 A.2d 396 (1969), the primary basis upon which zoning authority is founded for Stamford is a special act as embodied within the Charter of the City of Stamford, rather than the state enabling legislation contained in Chapter 124 of the General Statutes. The Stamford charter was enacted pursuant to a Special Act of the General Assembly in 1953, 26 Spec. Laws 1228, No. 619. Section 19.1.2 of the regulations provides that: "[a]ny person claiming to be aggrieved . . . by any order, requirement or decision made by the Zoning Enforcement Officer may appeal to the Zoning Board of Appeals as provided CT Page 16152 in Section 8-7 of the Connecticut General Statutes." General Statutes § 8-7 provides for appeals to a zoning board of appeals of "any order, requirement or decision of the official charged with the enforcement of the zoning regulations."
After a public hearing, the ZBA unanimously affirmed the ruling of the ZEO in a decision dated January 22, 2001. The ZBA did not state any reason for its decision. However, a member of the defendant agency indicated that: "Well, I think it was always two properties, and . . . It's been two properties ever since the original subdivision. There have been changes in the lot line . . . but those changes in the lot line did not make anything null and void as far as the legality and standing of the subdivision." The other members concurred.
The plaintiffs appealed the decision to this court as authorized by General Statutes § 8-8 (b), which provides that any person "aggrieved" by any decision of a board may appeal to the Superior Court. In their complaint, the plaintiffs allege that the defendant ZBA acted illegally, arbitrarily and in abuse of its discretion by failing to recognize that the subject lot could not be built upon because of "merger" and by not requiring the Dorfs to obtain subdivision or resubdivision approval.
At a hearing held in this court on May 29, 2002 for the purpose of establishing aggrievement, the plaintiffs, who own homes either adjacent to and abutting the subject premises, or opposite thereto, were found to be statutorily aggrieved pursuant to General Statutes § 8-8
(a)(2)(b).This statute provides in relevant part that "any person aggrieved by a decision of a board may take an appeal. . . ." The plaintiffs fit the definition of an "aggrieved person" in § 8-8 (a)(1) since they own "land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
This analysis begins with the standard of review to be employed by this court. "In reviewing the actions of a zoning board of appeals we note that such a board is endowed with a liberal discretion, and its [actions are] subject to review by the courts only to determine whether [they were] unreasonable, arbitrary or illegal." (Internal quotation marks omitted.) Francini v. Zoning Board of Appeals, 228 Conn. 785, 791,639 A.2d 519 (1994). "Courts must not substitute their judgment for that of the zoning board and must not disturb decisions of local boards as long as honest judgment has been reasonably and fairly exercised after a full hearing." (Citation omitted; internal quotation marks omitted.)Fernandes v. Zoning Board of Appeals, 24 Conn. App. 49, 53, 585 A.2d 703
(1991). It is also axiomatic that a plaintiff has the burden of proving CT Page 16153 that a zoning board of appeals has acted illegally, arbitrarily or in abuse of its discretion. Id., 55.
Moreover, if any one of the reasons advanced by an agency is sufficient to support its decision, then the ruling should be upheld. SaksonNursery, Inc. v. Planning and Zoning Board of Appeals, 30 Conn. App. 627,629-30, 621 A.2d 768, cert. denied, 226 Conn. 908, 625 A.2d 1379 (1993). The court's only role is to search the record to determine whether the ZBA's conclusion was reasonably supported by the record, but not attempt to weigh the evidence or determine issues of fact. Farrington v. ZoningBoard of Appeals, 177 Conn. 186, 190, 413 A.2d 817 (1979).
It is also true, on the other hand, that: "[i]n light of the existence of a statutory right of appeal from the decisions of local zoning authorities . . . a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty." QualitySand Gravel, Inc. v. Planning Zoning Commission,55 Conn. App. 533, 537, 738 A.2d 1157 (1999).
The standard of review of a decision by a ZBA with respect to the action of a ZEO is also well established. "[F]ollowing an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board." Caserta v. ZoningBoard of Appeals, 226 Conn. 80, 82, 626 A.2d 744 (1993). The court must decide whether the regulation was "correctly interpreted" by the ZBA and applied "with reasonable discretion to the facts." Spero v. Zoning Boardof Appeals, 217 Conn. 435, 440, 586 A.2d 590 (1991). The issue is only whether the defendant ZBA's decision was arrived at "fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Id.
As previously noted, the trial court is to determine on the basis of the record whether there was substantial evidence presented to the ZBA to support its findings. However, as is the case in this appeal, "[i]f the [ZBA] fails to give the reasons for its actions, or if its reasons are inadequate, the trial court must search the record to determine whether a basis exists for the action taken." Stankiewicz v. Zoning Board ofAppeals, 15 Conn. App. 729, 732, 546 A.2d 919 (1988), aff'd, 211 Conn. 76,556 A.2d 1024 (1989).
The history or background of these two appeals starts in September of 1958 when property owned by Earl I. Pangborn, consisting of 2.115 acres, CT Page 16154 was subdivided into two lots, 1.215 and .9 acres, respectively, with the approval of the Planning Board. There was a residence on the larger lot. The property was then in the R-10 zone.[2] In 1985, the Zoning Board rezoned the subject premises to RA-1, requiring a minimum of one acre. of the two lots, however, which were both in the same ownership, one, the subject property at 411 Soundview, was rendered nonconforming in that it contained .9 acres, not one acre.
The record further indicates that in August of 1989 the Dorfs filed a survey map with the Planning Board entitled "lot line adjustment" which included the notation that it was "not a subdivision." This map was numbered 12155. The "adjustment" involved adding to the subject lot a portion of a private road, Elm Way, 45 feet wide and partially paved, with access to Long Island Sound. This map increased this lot from .9 to 1.1 acres. In 1992 the Dorfs filed another similar map, 12415, indicating a further revision of the lot lines. The Dorfs own fee simple title to Elm Way, which is a paper street, but at least eight other properties have an easement or right of passage to Long Island Sound over Elm Way.
The issues in these appeals is whether a "merger" of the two lots occurred when the property was rezoned to one acre in 1985, and, if not, whether, because of the changed lot lines, the lot in question is buildable as the ZEO determined without first obtaining further subdivision or resubdivision approval. The ZEO testified before the ZBA that the property owners "had two lots in 1958, they have two lots now . . . Nothing here has changed the fact that they had two lots in 1958 and they have two lots in 2001." These statements and the ZBA's colloquy before affirming the ruling of the ZEO, however, do not discuss the applicability, if any, of the doctrine of merger.
The plaintiffs contend that a merger has occurred by operation of law because section 2A of article 1 of the regulations is a merger provision which caused the subject premises to merge with the adjoining lot upon the rezoning of these parcels from R-10 to RA-1. According to the plaintiffs, the merger of these parcels precludes the issuance of a building permit for the construction of a residence on the subject premises at 411 Soundview.
The record further indicates that throughout the relevant portion of the chain of title, both the subject premises and the adjoining lot have been held in common ownership as follows: On June 16, 1971, Margaret H. Pangborn, the widow of Mr. Pang born, conveyed the subject premises and the adjoining lot with the house to John L. Taylor, Jr. and Roberta D. Taylor, as one lot and without reference to the 1958 subdivision or Map #6412. Title to both the subject premises and the adjoining lot remained CT Page 16155 with the Taylors from 1971 to 1986. In 1985, during this period of ownership, as noted previously, the zoning designation changed from R-10 to RA-1. Thereafter, in August of 1986, the Taylors conveyed both the subject premises and the adjoining lot to Mr. and Mrs. Dorf, the defendants in this action. The description of the property being conveyed to the Dorfs differs from the description contained in the deed to the Taylors as the conveyance to the Dorfs refers to lots A and B as depicted on the 1958 subdivision map. As a matter of fact, the history of the two lots is not challenged by the defendants because their brief dated October 18, 2001 states: "The upzoning left one lot non-conforming as to area that was in the same ownership as the adjacent (conforming) lot."
Section 2A of article 1 of the regulations includes a provision that a lot rendered nonconforming by a zone change is nevertheless buildable provided that the owner of any such lot did not own sufficient adjoining land at the time of the adopting of the rezoning to cause the lot to conform with the amended requirements, i.e., the so-called "merger" doctrine. As noted previously, both lots at the time of the zone change were owned by the same person, Earl I. Pangborn.
Consequently, the ZBA should have found, from the record before it, that in 1985 there was a merger of lots pursuant to section 2A of article 1 of the regulations because at that time, the subject premises, containing .9 of an acre, was "made non-conforming in respect of area," and the then owner of the subject premises, Pang born, owned "sufficient adjoining land," containing 1.215 acres, to conform with the new minimum lot area requirements of the RA-1 zone.
The principle governing these appeals was set forth by the Appellate Court as follows: "[u]nder many zoning ordinances, where a lot became substandard by virtue of the passage of more restrictive zoning regulations, and where that lot was at the time of the passage of that legislation under common ownership with that of an adjacent lot, such zoning regulations have refused to continue to recognize the separate validity of that lot. The common exception of lots which were recorded prior to the effective date of a restrictive ordinance is limited to lots which were in single and separate ownership on that date. Under such a provision, an owner is entitled to an exception only if his lot is isolated. If the owner of such a lot owns another lot adjacent to it, he is not entitled to an exception. Rather, he must combine the two lots to form one which will meet, or more closely approximate, the frontage and area requirements of the ordinance." (Internal quotation marks omitted.)Neumann v. Zoning Board of Appeals, 14 Conn. App. 55, 60, 539 A.2d 614, cert. denied, 208 Conn. 806, 545 A.2d 1102 (1988). Two years later, the Appellate Court cited Neumann for the proposition that: "Merger can occur CT Page 16156 by operation of law; that is, a town's zoning regulations may mandate merger of adjacent lots that are commonly owned." Marino v. Zoning Boardof Appeals, 22 Conn. App. 606, 607, n. 1, 578 A.2d 165 (1990).[3] "Once merged, the lots form one lot that meets or more closely approximates the zoning requirements and the separate lots lose their exception for nonconformance." Johnson v. Board of Zoning Appeals, 35 Conn. App. 820,826, 646 A.2d 953 (1994).
Applying the foregoing principle to the present cases, the record before the ZBA supports a reading of section 2A of article 1 as a merger provision, with an exception that is inapplicable to the subject premises. Under the defendants' interpretation and application of section 2A of article 1, the subject premises were a "lawfully existing" lot on the date of the change in the zoning regulations and, therefore, such lawful existence continues to date and allows a building permit to issue for the subject premises. However, if section 2A of article 1 operates to render an undersized lot lawful for residence purposes in situations where, as here, the owner of such lot owned sufficient adjoining land at the time such lot became nonconforming, then the section lacks any import. Section 2A of article 1 applies to protect as lawful only lots held in single and separate ownership, where the owner "did not own sufficient adjoining land" at the time such lot became nonconforming because of a zone change. Thus, the court finds that section 2A of article 1 of the regulations does not function to protect the subject premises as lawful for the purpose of constructing a residence thereon.
Pursuant to section 2A of article 1 of the regulations, the subject premises merged with the adjacent lot in 1985, when the zoning designation of these parcels changed from R-1 0 to RA-1. At that time, the owner of the subject premises, Earl Pangborn, owned sufficient adjoining property so as to render the parcels, when taken together, one single lot in conformity with the new lot area provisions of the regulations.
Because there is not sufficient evidence in the record to sustain the decision by the ZBA that the issuance of a building permit by the ZEO was justified, and based on the standard of review of decisions of a zoning board of appeals, the appeals of the plaintiffs are granted and the decision of the ZBA is reversed as authorized by General Statutes § 8-8
(k).[4]
Costs are to be taxed by the chief clerk in accordance with General Statutes § 52-257 and Practice Book § 18-5.
So Ordered. CT Page 16157
Dated at Stamford, Connecticut, this 20th day of December, 2002.
 ___________________ William B. Lewis Judge (T.R.)