GUY POIRIER ET AL. *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF WILTON
(AC 22063)

Mihalakos, Flynn and Bishop, Js.

Argued October 30, 2002—officially released February 25, 2003

*Matthew C. Mason*, for the appellants (plaintiffs).

*Maureen Danehy Cox*, with whom, on the brief, was *Jennifer E. Sills*, for the appellee (defendant).

*Opinion*

BISHOP, J. The plaintiff homeowners appeal from the judgment of the trial court rendered in favor of the defendant zoning board of appeals of the town of Wilton (board) dismissing their appeal from the board's decision upholding the denial of a permit for construction on the plaintiffs' property. The main issue on appeal is how General Statutes § 8-26a (b) applies to the plaintiffs' lot and their application for a zoning permit to construct a garage and breezeway on that lot. We reverse the judgment of the trial court.

I

FACTS AND PROCEDURAL HISTORY

The plaintiffs, Guy Poirier and Colette Poirier, own a home in the town of Wilton. Their home was built in 1954 as part of a thirty-eight lot subdivision and approved by the town planning commission. The approved plan subsequently was filed with the town clerk, and a map was recorded in the land records on April 15, 1954.

In 1999, the plaintiffs submitted an application to the Wilton zoning enforcement officer (officer) for a zoning permit to construct a garage and breezeway on the lot.[1] The officer denied the permit because the proposed buildings would, in combination with the existing house, exceed the maximum coverage allotments as set forth in the Wilton zoning regulations. The plaintiffs contended that, at the time the subdivision plan that included their lot was approved, no coverage regula-

[1] A zoning permit is a prerequisite for a building permit for any new construction in the town of Wilton. "The ZEO shall issue a Zoning Permit upon determination that the proposed development is in accord with [the Wilton zoning regulations]." Wilton Zoning Regs., § 29-12.D.3.

tions existed in the town and, by virtue of § 8-26a (b), their lot was exempt from subsequent changes in zoning regulations.

Central to the dispute is the applicability of § 8-26a (b) to the plaintiffs' subdivision lot. That statute provides in relevant part: "Notwithstanding the provisions of any general or special act or local ordinance, when a change is adopted in the zoning regulations or boundaries of zoning districts of any town, city or borough, no lot or lots shown on a subdivision plan for residential property which has been approved, prior to the effective date of such change, by the planning commission of such town, city or borough, or other body exercising the powers of such commission, and filed or recorded with the town clerk, shall be required to conform to such change." General Statutes § 8-26a (b).

The plaintiffs argue that the statute applies to their lot. In their appeal to the board from the ruling by the officer, the plaintiffs argued that, despite the fact that the new regulations no longer permit them to build as they would desire, they are entitled to build according to the zoning regulations in effect at the time of their subdivision's approval.

At a public hearing on January 19, 2000, the officer elaborated on his reasoning for denying the permit. In doing so, he relied on an opinion from counsel, retained by the town, who had examined the legislative history of § 8-26a (b). The officer came to the conclusion that the original version of the statute was enacted in 1959[2]

---

[2] The statute was enacted as Public Acts 1959, No. 59, titled "An Act Concerning the Effect of Zoning Changes on Approved Subdivision Plans For Residential Property," and was accompanied by Public Acts 1959, No. 58, titled "An Act Concerning the Effect of Subdivision Regulation Changes on Approved Subdivision Plans For Residential Property," which now is codified as General Statutes § 8-26a (a).

The two subsections have been revised several times in the intervening years. Originally, in 1959, the protection from changes in subdivision and zoning regulations offered by the statute was for three years. In 1965, the language of § 8-26a (b) was changed to include in the protection scheme

at the behest of builders to prevent local zoning agencies from changing zoning regulations before the builders' projects were completed, thereby requiring retroactive compliance. That, the officer determined, would lead to the conclusion that the statute applied to changes in the regulations such as "changes in setback requirements or minimum lot dimension requirements that could reduce the utilization of [the] improved lot or even make it unbuildable." The statute, he concluded, did not protect an approved lot from the applicability of subsequently enacted coverage limits, which were "a new and reasonable control that has heretofore not thwarted development of lots such as this." Consequently, the officer decided that the statute did not apply to the coverage requirements in question. The board denied the appeal from the officer's ruling, concluding that his interpretation of the statute was reasonable.

The plaintiffs appealed from the board's decision to the Superior Court. The focus of the court's analysis was on a new argument presented by the defendant, namely, that should § 8-26a (b) be determined to apply to all subsequently enacted zoning regulations (coverage regulations, inclusive), it should not be applied retroactively to pre-1984 subdivision plans.[3] The court engaged in a thorough examination of the principles of retroactive legislation and concluded that the 1984 revision of the statute was a substantive change in the law, substantive changes in the law are presumptively not applied retroactively absent any clearly expressed

the "lots shown on a subdivision plan" and buildings "to be erected." In 1969, the length of protection was extended to five years. In 1984, the time limit for the protection was eliminated from the language of the statute altogether.

[3] See footnote 2. Through Public Acts 1984, No. 84-147, § 2, General Statutes § 8-26a was amended to eliminate the time limit for which a properly approved lot would be exempt from subsequent zoning regulations. It is the most recent revision to that statute.

legislative intent to the contrary, and the statute, in this case, should not be applied retroactively. In so concluding, on April 22, 2000, the court dismissed the plaintiffs' appeal. This appeal followed. Additional facts will be introduced as necessary.

## II

## ANALYSIS

On appeal to this court, the plaintiffs renew their argument that their lot falls squarely under the protection of § 8-26a (b). The defendant presents two new arguments for affirmance on alternate grounds. The first is that the 1984 revision of the statute was, in fact, a technical, nonsubstantive change in the law and that the law remains, when read in its entirety, substantially the same as the 1969 revision of the statute, which protected an approved subdivision lot from subsequent changes in zoning regulations for five years.[4] The defendant's second argument is that the statute does not protect a subdivision lot from subsequent changes in zoning regulations that were not implicated by the subdivision plan itself. The statute's protection, the defendant argues, extends only to what is shown on the approved plan and lasts only for the period of time necessary for the developer to implement those plans. We address those arguments in turn.

Regarding our standard of review in this matter, we note that statutory interpretation involves a question of law and, thus, our review is plenary. *Gelinas* v. *West Hartford*, 65 Conn. App. 265, 275, 782 A.2d 679, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001).

## A

The plaintiffs argue that they satisfied all the requirements of the statute. We agree. General Statutes § 8-

[4] See footnote 2.

26a (b) provides in relevant part that "when a change is adopted in the zoning regulations . . . of any town . . . no lot . . . shown on a subdivision plan for residential property which has been approved, prior to the effective date of such change, by the planning commission of such town . . . and filed or recorded with the town clerk, shall be required to conform to such change."

There is no dispute that the subdivision plan was approved properly by an authorized planning commission, and filed and recorded with the town clerk, nor is it contested that the plaintiffs' residential lot was shown on the plan. Furthermore, the regulation pertaining to limits on coverage is to be found in the town of Wilton's zoning regulations, which are on file in the planning and zoning department of the town of Wilton. Thus, the regulation pertaining to limits on coverage is presumptively a "zoning regulation."[5] The officer testified that the coverage regulations were adopted subsequent to the 1954 approval of the subdivision plan.

The concern that the court had with the application of § 8-26a (b) to the plaintiffs' lot was simply that to apply the statute retroactively, given the substantive nature of the 1984 amendment, would be counter to established jurisprudence on statutory interpretation. We believe that this concern is misplaced because retroactive application is unnecessary to the statute's effect on the plaintiffs' lot. "A statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends, or some of them, are drawn from a time antecedent to the enactment." *Reynolds* v. *United States*, 292 U.S. 443, 449, 54 S. Ct. 800, 78 L. Ed. 1353 (1934). The statute, by its own language,

---

[5] The coverage requirements are found in the same section of the zoning regulations as the setback requirements. Wilton Zoning Regs., § 29-5.D. The defendant does not contest that the plaintiffs' lot is exempt from setback regulations.

applies to any plan "which *has been approved,* prior to the effective date of such change . . . ." (Emphasis added.) General Statutes § 8-26a (b). "Given their natural meaning, these words plainly are applicable to the situation with which the court below was called upon to deal." *Reynolds* v. *United States,* supra, 447. In other words, the statute is prospective, despite its effect on the *presently* approved, filed and recorded plans, such as the plaintiffs', which happened to have been approved, filed and recorded prior to 1984.

Our Supreme Court interpreted a similarly worded statute in *Schieffelin & Co.* v. *Dept. of Liquor Control,* 194 Conn. 165, 479 A.2d 1191 (1984), in the same manner. The question before the court was whether Public Acts 1981, No. 81-367 (P.A. 81-367), which concerned the termination of liquor distributorships, was intended to affect existing distributorships. *Schieffelin & Co.* v. *Dept. of Liquor Control,* supra, 169–71. The court held that the use of the present perfect tense in the language of P.A. 81-367[6] "indicates an action or condition that was begun in the past and is still going on or was just completed in the present. Thus, although the act applies prospectively to terminations of distributorships, the criteria upon which such terminations are to be considered might well arise either before or after its effective date. Cf. *Hartford* v. *Suffield,* 137 Conn. 341, 343, 77 A.2d 760 (1950)." *Schieffelin & Co.* v. *Dept. of Liquor Control,* supra, 175.

This court has acknowledged that a prospective application, with past approvals inclusive, is, in fact, the

___

[6] Specifically, the language involved in relevant part was: "When a holder of a wholesale permit *has had* the distributorship of any alcohol . . . product . . . for six months or more, such distributorship may be terminated . . . ." (Emphasis added; internal quotation marks omitted.) *Schieffelin & Co.* v. *Dept. of Liquor Control,* supra, 194 Conn. 169 n.2. At the risk of being pedantic, we note that "has had" is the present perfect tense of the word "have." Here, the verb form "has been approved" in General Statutes § 8-26a (b) is the present perfect passive tense of the word "approve." W. Sabin, Gregg Reference Manual (7th Ed. 1992) § 10, pp. 221–23.

effect of § 8-26a (b). In *Johnson* v. *Board of Zoning Appeals*, 35 Conn. App. 820, 646 A.2d 953 (1994), we sought to determine whether the effect of the town selectmen's approval of a subdivision plan—in 1918—was equivalent to an approval from a town planning commission for the purposes of the statute's applicability. Id., 821–24. We held that it was not equivalent. Id., 826. "If, however, [the selectmen] exercised the powers of a planning commission when [they] adopted the map depicting [the lot], then [the lot] is shielded from [the subsequent change in lot size] requirement." Id., 824.

Similarly, in *Gay* v. *Zoning Board of Appeals*, 59 Conn. App. 380, 757 A.2d 61 (2000), we concluded that a subdivision lot properly approved in 1950 was not required to conform to subsequent changes in zoning regulations, per § 8-26a (b), that building on the nonconforming lot would be permitted and that a variance would not be required.[7] Id., 386–88. In *Iannucci* v. *Zoning Board of Appeals*, 25 Conn. App. 85, 592 A.2d 970 (1991), we also stated that had no merger occurred between two lots, a properly filed and approved subdivision plan from 1938 would be subject to the protection of § 8-26a (b). Id., 91.

In *Ross* v. *Conservation Commission*, Superior Court, judicial district of Fairfield, Docket No. 301484 (November 12, 1993) (10 Conn. L. Rptr. 313) (*Fuller, J.*), the court confronted the question directly. In *Ross*, the owners of a pair of building lots that were part of a 1962 subdivision plan that was approved, filed and recorded in the town of Westport, claimed that their lots were exempt from subdivision and zoning regulations enacted subsequent to approval. The court agreed.

[7] In *Gay*, the trial court held that "General Statutes § 8-26a (b) . . . applies to the plaintiffs' case . . . ." *Gay* v. *Zoning Board of Appeals*, supra, 59 Conn. App. 383–84. We affirmed the court's judgment, but noted that "[t]he defendant does not attack the validity of the application of § 8-26a (b) to the plaintiffs' lot . . . ." Id., 383 n.5.

"[The lots] come squarely within the protection pro-
vided to approved subdivision lots by 8-26a (a) and (b)
of the General Statutes. . . . [T]he phrasing of these
statutes is clear and unambiguous, and the plaintiffs'
lots comply with the exemption requirements contained
in them. The courts do not construe statutes whose
meaning is plain and unambiguous . . . or by construc-
tion add exceptions merely because it appears that good
reasons exist for doing so." (Citation omitted.) Id., 314.

The "good reasons" for not applying the statute as
written are patent: the statute, as written and as we
interpret it, provides a "sweeping statutory restriction"
on a town's ability to regulate land use once it has
approved a plan. T. Tondro, Connecticut Land Use Reg-
ulation (2d Ed. 1992) p. 219. "[The statute] *forever* pro-
hibits the application of new subdivision or zoning
regulations to all subdivisions once they are approved
. . . ." (Emphasis added.) Id. By enacting the statute,
"[t]he legislature has clearly made a policy decision
that once the division of the land and proposed lot
layout has been reviewed by the municipality through
its planning commission the subdivision does not have
to be reviewed again, and that the subdivision lots are
not affected by subsequently enacted zoning regula-
tions." *Ross* v. *Conservation Commission*, supra, 10
Conn. L. Rptr. 315.

In the present case, we agree with the plaintiffs that
the 1954 subdivision plan that includes their lot and
that was approved, filed and recorded in the town of
Wilton places their lot within the intended scope of § 8-
26a (b) and its attendant exemptions.

B

The defendant makes the argument that, when read
in its entirety and with the guidance of the statute's
legislative history, § 8-26a (b) has a much more limited

scope than the plaintiffs, and our courts, would suggest. In particular, the defendant relies on what it claims is the effect that General Statutes § 8-26c has on § 8-26a (b) and cites the entire history of § 8-26a (b). The defendant additionally argues that § 8-26a (b) does not protect a subdivision lot from subsequent changes in zoning regulations that were not implicated by the subdivision plan itself. The statute's protection, the defendant argues, extends only to what is shown on the approved plan and exists only for the period of time necessary for the developer to complete those plans.

Normally, when the language of a statute is clear, we need not look beyond the words to discern legislative intent. "We must . . . examine the language of the amended statute. In analyzing the statutory language, we employ the standard rules of statutory construction. To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further. . . . If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from 'extrinsic aids,' e.g., the legislative history." (Internal quotation marks omitted.) *Anderson* v. *Schieffer*, 35 Conn. App. 31, 40–41, 645 A.2d 549 (1994).

The defendant argues, essentially, that § 8-26a (b), when read in the light provided by its legislative history and in conjunction with accompanying zoning statutes, is susceptible to an alternative, conflicting interpretation. We conclude that the relationship between §§ 8-26a (b) and 8-26c (a) sufficiently opens the door to another plausible interpretation of § 8-26a (b) to persuade us that guidance from the statute's legislative history would be availing.

General Statutes § 8-26c (a), enacted in 1967, provides in relevant part: "Any person, firm or corporation

making any subdivision of land . . . shall complete all work in connection with such subdivision within five years after the approval of the plan for such subdivision; the commission's endorsement of approval on the plan shall state the date on which such five-year period expires."

The defendant argues that when the legislature amended § 8-26a (b) by deleting reference to the five year grace period, that was not an attempt to extend the grace period indefinitely, but an attempt to eliminate superfluous language. The defendant argues that § 8-26c (a) retains the five year limitation and that reference to a five year limit is unnecessary in § 8-26a (b).

Underlying that argument is the idea that if, within five years, "all work in connection with such subdivision"; General Statutes § 8-26c (a); is not completed, then the approval automatically expires and, as an *unapproved* subdivision plan, whether properly filed and recorded or not, the plan no longer receives the protection of § 8-26a (b). To understand the relationship between the two statutes it is necessary, then, to define the term "work" as used in § 8-26c (a). If it is defined as all potential construction now and in the future, then it plausibly could be understood to limit the potential impact of § 8-26a (b).

The definition is not so expansive. The definition is supplied in § 8-26c (c): " 'Work' for purposes of this section means all physical improvements required by the approved plan, other than the staking out of lots, and includes but is not limited to the construction of roads, storm drainage facilities and water and sewer lines, the setting aside of open space and recreation areas, installation of telephone and electric services, planting of trees or other landscaping, and installation of retaining walls or other structures." General Statutes § 8-26c (c).

Clearly, the work referred to is the basic infrastructure of the subdivision site and stops short of requiring completed construction on the individual lots (or even the staking out of the individual lots). We surmise from this that the failure to complete all private construction does not give rise to the expiration of the subdivision plan's approval.[8]

Our courts are in accord with that understanding of the interplay of the two statutes. "The purpose of § 8-26c is to guarantee that the subdivision improvements, relating to public safety and access, are completed to prevent the municipality and the lot purchasers from incurring the cost of completing subdivision roads and other improvements, and to give lot purchasers safe access to their lots. . . . The statute defines 'work' . . . . The listed items [in the definition] are all *public* improvements, such as roads, drainage facilities and public utilities relating to the public areas in the subdivision and it does not include private improvements such as residences. Subdivision approval merely says that the lot is suitable for development. It does not *require* construction of a residence on an approved lot. . . . See [T. Tondro, supra], p. 220. Approved subdivision lots lose the exemption in § 8-26a only if the public improvements are not completed . . . ." (Citation omitted; emphasis in original.) *Ross* v. *Conservation Commission*, supra, 10 Conn. L. Rptr. 315.

Here, there is no contention that the work, as statutorily defined, was not completed in the prescribed time. Finding no time limit for the exemption from later

---

[8] Further undermining defendant's argument, General Statutes § 8-26c was adopted in 1967, and the amendments to General Statutes § 8-26a (a) and (b) that deleted the reference to a five year limit on the protection against subsequent changes happened seventeen years later in 1984. At no time during the legislative history of the two statutes and their amendments between 1967 and 1984, was there any discussion that the five year limit on the one was in any way related to the five year limit on the other.

changes in zoning regulations that would affect private improvements on a properly approved subdivision lot in the language of § 8-26a (b), we turn to the statute's extensive legislative history.

After an examination of the forty-four year history of § 8-26a and its amendments, we find the history, at best, inconclusive to the defendant's contention that the statute's intended purpose was *not* to protect the plaintiff's lot from future changes in subdivision and zoning regulations. Additionally, we find no indication that the legislature intended distinctions to be drawn between certain zoning regulations, for example, that protection might extend to changes in setback requirements, but not to changes in coverage requirements.[9]

In the course of the bill's adoption in 1959, debate occurred and objections were noted.[10] Ultimately, the

[9] At least one legislator appeared cognizant of the potential for confusion on that issue. Representative Nicholas B. Eddy of New Hartford remarked: "Mr. Speaker, the law now is . . . that . . . it is possible . . . to change some of the regulations that relate to the use of the land as distinguished from lot size. Now, the basic objection to this bill . . . is . . . that by inference the planning commission will be given power after three years to change something it cannot now change. . . . I say to you further, sir, that it's our system that the courts will decide these questions and I'm not satisfied that the courts have considered in detail just which regulations can be changed at this point based upon the facts of a particular case . . . and I predict that if this bill is passed, when it is construed by the courts, there are going to be many here who will be surprised at the meaning of what they have passed and for that reason I think it would be best if the bill is sent back to committee." 8 H.R. Proc., Pt. 3, 1959 Sess., pp. 1005–1006.

In a similar vein, Representative Benjamin M. Schlossbach of Westbrook was moved to comment: "I would like to suggest, Mr. Speaker, that in view of the fact that unquestionably there is some confusion, that the purpose of a good bill is to avoid litigation and not to promote it, and evidently unquestionably this will have to be decided by a court and not by us. I would like to suggest . . . [the committee] reconsider this matter." Id., pp. 1003–1004.

[10] The objections included the fact that the legislation seemed to provide greater protection for owners of lots contained in a subdivision plan than for the owners of isolated lots. Moreover, the future planning of the town might require reaction to unforeseen events, and the legislation would hobble a town's ability to cope with such events. The additional protections for

bill passed, objections notwithstanding. The prevailing sentiment was, as stated by Representative Burton J. Jacobson of Monroe, that "[t]he builder or developer is entitled to know the rules under which he will operate. . . . Builders and developers buy land and make investments in plans relying upon the course that they will incur under a certain set of regulations. Once they have filed their plan their investment should be protected . . . ."[11] 8 H.R. Proc., Pt. 3, 1959 Sess., pp. 987–88.

Although, as the legislative history shows, builders and developers were the impetus for and prime beneficiaries of the legislation, that fact in no way excludes landowners such as the plaintiffs from benefiting from the legislation as well. To apply the statute to builders and to developers and not to homeowners would require a drawing of distinctions between classes of developers (i.e., amateur versus professional), and create a fundamentally different situation for those who buy a "fully" developed lot and those who buy an unimproved, or partially developed, lot, with the intention of developing it further. That we choose not to do.

subdividers, opponents argued, could cause a rush to subdivide to protect a landowner's future interests. Other legislators protested the disproportionate benefits developers would receive at the expense of a town's power to plan its orderly development.

Representative Robert S. Orcutt of Guilford stated: "This is the first attempt in this session by a special interest group to erode some of the planning controls that every town needs in order to plan for its future. To my knowledge, only the builders' groups supported this bill at the hearing. The Connecticut Federation of Planning and Zoning Agencies . . . went on record as being opposed to this bill." 8 H.R. Proc., Pt. 3, 1959 Sess., pp. 983–84.

[11] The initial goal of the 1959 legislation was, as the legislative history shows, to prevent zoning boards from approving a subdivision plan and then, after development had proceeded, changing the zoning or subdivision regulations. That situation, decried by the building industry, led to occasions where developers incurred (sometimes substantial) expenses and were left in a relatively vulnerable position with respect to the changing regulations until their subdivisions were completed.

## III

## CONCLUSION

"Zoning regulations . . . cannot be construed to include or exclude by implication what is not clearly within their express terms." (Internal quotation marks omitted.) *Northeast Parking, Inc.* v. *Planning & Zoning Commission*, 47 Conn. App. 284, 293, 703 A.2d. 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998). "[I]t is not the province of a court to supply what the legislature chose to omit. The legislature is supreme in the area of legislation, and courts must apply statutory enactments according to their plain terms." (Internal quotation marks omitted.) *Bona* v. *Freedom of Information Commission*, 44 Conn. App. 622, 636 n.14, 691 A.2d 1 (1997). Here, the plain terms of § 8-26a (b) gave the plaintiffs a vested right, and that right entitled them to a zoning permit.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the plaintiffs.

In this opinion the other judges concurred.